In the Matter of the Judicial Settlement of the Final Account of Proceedings of IRVING TRUST COMPANY and ROBERT T. SHELDON (Appointed by the New York Supreme Court, County of Kings, to Execute, as Trustees, the Remaining and Unexecuted Trusts Created under the Last Will and Testament of JOSEPH BATTELL, Deceased), as Trustees of the Trust for ELLEN B. STOECKEL, under the Will of JOSEPH BATTELL, Deceased.*

IRVING TRUST COMPANY, as Trustee of the Trust for ELLEN B. STOECKEL under the Will of JOSEPH BATTELL, Deceased, Petitioner.

WINIFRED M. SHELDON, as Executrix, etc., of ROBERT T. SHELDON, Deceased, EVELYN HUMPHREY, IRENE B. MOFFATT, MARY E. ALGER MURPHY, JESSICA S. SWIFT, PHILIP B. STEWART, ISABEL B. GRISWOLD, and KATHERINE H. SWIFT, Appellants; ROSA E. TUTTLE, Respondent.

Second Department, January 13, 1941.

*Revg. 173 Misc. 273.

*Frederick F. Rehberger* [*Daniel Burke* with him on the brief], for the appellant Winifred M. Sheldon, as executrix, etc.

*Clifton P. Williamson,* for the appellants Evelyn Humphrey, Irene B. Moffatt, Mary E. Alger Murphy, Jessica S. Swift and Philip B. Stewart.

*John F. Woods* [*Harter F. Wright* with him on the brief], for the appellant Isabel B. Griswold.

*C. S. Huffman, Jr.,* for the appellant Katherine H. Swift.

*Dudley Miller,* for the respondent Rosa E. Tuttle.

JOHNSTON, J.   Two questions are presented: *First,* the interpretation of the second paragraph of article " Thirteenth " of the will of the testator, Joseph Battell; *second,* the allowance to be made for the services rendered by a deceased trustee, Robert T. Sheldon, who had been appointed by the court to administer the unexecuted trusts created by the will.

The testator, a resident of Kings county, executed his will in 1868 and died in 1874.   By his will he disposed of a substantial estate amounting approximately to $1,000,000, the greater part of which he gave to his own kin.

The dispute here relates to the final distribution to be made of a part of the residue.   The entire residue was given to trustees in trust and they were directed to divide it into as many equal parts " as there shall be nephews and nieces " of the testator living at the time of his death or who predeceased him leaving lawful issue who are then living; and to allot one such share to

each nephew and niece and to the issue of any deceased nephew or niece. With respect to the shares to be allotted to testator's living nephews and nieces, the will, in the second paragraph of article " Thirteenth," provides: " As to any and each part or share so allotted to any nephew or niece, to hold the same and keep it invested and apply the clear, net interest and income thereof, after payment out of such income of all taxes upon the principal and all proper charges and expenses of investment, reinvestment collection and appropriation to the use of the nephew or niece to whom the same is allotted as aforesaid for and during the natural life of such nephew or niece: And at his or her death to assign transfer and pay over the same to his or her lawful issue if any there shall be then living: And if there be no such issue when [then] living, then and immediately upon the decease of such nephew or niece to assign transfer and pay over the same to such person and persons as are *then* by law the lawful ' *heirs-at-law* ' of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

It should be noted that the word " then " was underscored by the testator; that the words " heirs-at-law " were underscored and quoted by the testator; and that the words " as heirs at law," which are in parentheses, were thus inclosed by the testator.

It is the meaning of the last sentence of the paragraph quoted above as to which a judicial construction is sought.

Pursuant to this paragraph the trustees set up a trust for Ellen B. Stoeckel, a niece of the testator. I will hereafter refer to her as the niece. In 1939 the niece died without issue. This terminated the only outstanding trust under the will. She left her surviving two conflicting sets of claimants: (1) the respondent, Rosa E. Tuttle, a first cousin on her mother's side, being a child of one Elizabeth Mills, a sister of the niece's mother; and (2) the seven appellants, Evelyn Humphrey, Irene B. Moffatt, Mary E. Alger Murphy, Jessica S. Swift, Philip B. Stewart, Isabel B. Griswold and Katherine H. Swift — all second and third cousins on her father's side, being descendants of testator's deceased brother Philip Battell and of his deceased sisters, Urania Humphrey and Sarah Eldridge.

Respondent contends that upon the decease of the niece without issue, she is such person as is then by law the lawful heir at law of such niece and is entitled to such share and proportion as she would by law inherit (as heir at law) from such niece. Respondent bases her claim on the provisions of subdivision 6 of section 83 of the Decedent Estate Law. This section was added by chapter 229 of the Laws of 1929. Under this subdivision respondent, as

the niece's nearest next of kin, would be entitled to the entire corpus of the trust, amounting approximately to $300,000.

Appellants contend that upon the decease of the niece without issue the respondent did not become her heir at law, and that section 83 of the Decedent Estate Law is inapplicable because the act of 1929 (§ 21 thereof) specifically states that the provisions of section 83 and other related sections " shall apply only to the estates or wills of persons dying after August thirty-first, nineteen hundred and thirty; and the provisions of law affected by such sections in force prior to the taking effect of this act shall apply to the estates and wills of all persons dying prior to September first, nineteen hundred and thirty, with the same force and effect as if they were not hereby amended." The act became effective September 1, 1930. Appellants urge that the provisions of law in force prior to the taking effect of this act are to be found in the former section 88 of the Decedent Estate Law. Under that section appellants, as the descendants of the testator's deceased brother and sisters, would be entitled to the remainder of the trust as though it were an inheritance which came " to the intestate [the niece] on the part of the father " of the niece, Robbins Battell, testator's brother.

The surrogate held that while the act by its terms was not applicable to the estate or will of one who died prior to September 1, 1930, nevertheless the testator, by the express language used in the last sentence of the quoted paragraph, indicated that the law which shall be in effect at the date of death of the niece is the law which shall determine the identity of the niece's heirs at law and the proportions in which they shall inherit. Therefore, the surrogate awarded the entire corpus of the trust to the respondent. In my opinion the language of the quoted paragraph, read in the light of the rest of the will, warrants no such construction. Indeed, whatever evidence of intention it does furnish leads to the belief that to invoke the present section 83 would do violence to the intention of the testator.

By chapter 229 of the Laws of 1929 the Legislature added to the Decedent Estate Law the present article 3 (§§ 80 to 88) on descent and distribution of the property of an intestate. This act made a radical change in the law regulating the descent of real property. Generally, it may be said that the effect of the act was to make real property of an intestate descend to the same persons and in the same proportions as personal property was distributable. As stated in the act itself (§ 20), its purpose is " to remove the present distinctions, so far as possible, between real and personal property in their treatment as assets of an estate; and to make uniform the descent and distribution of real and

personal property, and to abolish the distinction heretofore existing in the descent and distribution thereof." Section 81 of the new article 3 specifically provides that: "All distinctions between the persons who take as heirs at law or next of kin are abolished and the descent of real property and the distribution of personal property shall be governed by this article *except as otherwise specifically provided by law.*" The italicized words should be read in conjunction with the act itself, particularly section 21 thereof, which expressly makes its provisions applicable to the estates and wills of persons dying after August 31, 1930, and specifically states that the existing provisions of law shall apply to the estates and wills of persons dying before that date "with the same force and effect as if they were not hereby amended."

The testator having died prior to September 1, 1930, the act by its terms has been made inapplicable to his estate. (*Matter of Waring,* 275 N. Y. 6.) Despite this, however, a testator himself may invoke that act by expressly declaring in his will that the law in effect at the time of the death of the life beneficiary shall determine the persons entitled to inherit the corpus of the trust and the proportions in which they shall take. (*Matter of Waring, supra; Matter of Lake,* 170 Misc. 840; *Matter of Bound,* 171 id. 591.)

The question, therefore, is whether the testator, by the language which he used in the quoted paragraph of his will, intended to invoke the act in effect at the time of the death of the niece. I think not. He showed, as clearly as he could, that those, and only those, who comprise the class of heirs at law, as that term was generally known and used at the time he executed his will, shall inherit the corpus of the trusts he created. Thus, in the quoted paragraph the first time the words "heirs at law" appear they are both underscored and quoted. Then, so as to remove any possibility of doubt that the inheritance is to be confined exclusively to those falling within the class of heirs at law, the testator repeated the words "heirs at law" in parenthetical form even though he could have omitted them entirely without disturbing the grammatical completeness or sense of the sentence.

The discriminating choice of the words "heirs at law," the emphatic form of their expression, and their repetition plainly show that the testator selected them purposefully and was careful to avoid the use of all synonymous words, such as next of kin, issue, descendants, etc. The significance of the use of the words "heirs at law" and the significance of thus underscoring and quoting them, is this: In the course of the administration of the trusts created by the will the corpus might at times consist of real property or personal property or both. Under such circumstances,

if the testator had merely used the words " heirs at law " without giving them any special emphasis, then upon the niece's death without issue, doubt would immediately arise as to the persons entitled to receive the corpus. If at the time of distribution the corpus consisted, as it usually does, of personal property, as in this case, then under the law as it read when the testator executed his will and when he died, the following persons would be entitled to share in the corpus: (1) the surviving spouse of the deceased life beneficiary under subdivision 1 of the former section 98; and (2) the nearest next of kin of the deceased life beneficiary under subdivision 5 of the same section. Moreover, by reason of the provisions of subdivision 12 of the former section 98, that " No representation shall be admitted among collaterals after brothers and sisters descendants," the remainder might be inherited by persons other than descendants of the testator's brothers and sisters or would escheat to the State.

It was precisely such consequences that the testator deliberately sought to avoid when he employed the words " heirs at law " and expressed them in the emphatic manner in which he did. For such words, relating as they do to those who inherit real property, show a clear intent on the part of the testator to have the corpus of the trusts descend in exactly the same manner as real property would descend pursuant to the provisions of the former section 88. Under that section the devolution of property to the " heirs at law " would effectually avoid these consequences.

Of course, from a literal reading of the quoted paragraph of the will it might appear that the learned surrogate is correct and that the present provisions of the Decedent Estate Law should be applied. But reading the will as a whole, it clearly appears that the testator intended the bulk of his fortune, even after the death of the life beneficiaries, to remain in the possession of the lineal descendants of his brothers and sisters. To permit it now to go outside the Battell family would, in my opinion, be directly contrary to the intention of the testator.

This conclusion finds support in prior adjudications. (*Matter of Waring, supra; Matter of Lake, supra; Matter of Bound, supra.*)

In the *Waring* case the testator died in 1907. By his will, executed in 1899, he created a trust to pay the income for life to his son, John T. Waring, Jr., and provided that " as to the distribution of the capital of the said trust fund, upon the death of the said John, I direct the said trustees to pay the same over to the lawful descendants, if any, of the said John, in equal shares, *per stirpes* and not *per capita*, and if there be no such descendants to the next of kin of the said John, according to the laws of the

State of New York." The life beneficiary, the son John, died in 1935, leaving a widow but no descendants surviving. The widow contended that under the law as it then read (Dec. Est. Law, §§ 81, 82, 83, as added by Laws of 1929, chap. 229) she was entitled to share in the corpus of the trust. She was entitled to share, she claimed, under the general rule "that when property at a future date is to pass to a certain class of persons it will be distributed amongst the persons who compose such class at the date of distribution." (*Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 133.) The Court of Appeals pointed out that under the general rule the membership in such class and the extent of the interest of each member must be determined by the law in force at the time of the death of the life beneficiary. The court held, however, that the widow was not entitled to any part of the corpus for the reason that the saving provision in chapter 229 made the law "in force" at the time of the life beneficiary's death the law which is applicable to wills and estates of decedents who died prior to September 1, 1930; and hence it is this prior law to which resort must be had to determine the class of persons entitled to share in the final distribution.

By way of dictum Judge RIPPEY added (p. 13): " Had the testator here said merely that the remainder should pass according to the laws of the State of New York in effect at the time of the death of the son, distribution under the provisions of section 83, subdivision 4, of the Decedent Estate Law [as added by chapter 229, Laws of 1929] might have been made." In other words, Judge RIPPEY pointed out that it is conceivable that a testator may, by express language, create an exception to the general rule. In the case at bar the surrogate was of the opinion that the language used by the testator in the quoted paragraph, particularly the last twenty words thereof, created such an exception and was equivalent to a general direction " that the remainder should pass according to the laws of the State of New York in effect at the time of the death " of the niece. I see no substantial distinction between the direction in the instant will to pay the corpus upon the decease of the life beneficiary without issue " to such person and persons as are *then* by law the lawful ' *heirs-at-law* ' of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece," and the direction in the Waring will to pay over the corpus of the trust upon the decease of the son John, the life beneficiary, without descendants, " to the next of kin of the said John, according to the laws of the State of New York." There is merely a difference in phraseology, but none in intent. The addition of the word " then " in the case

at bar adds nothing because the intention of both testators clearly was to have the principal of the trust distributed to those who compose the designated class under the law in force at the time of distribution; and that, of course, conforms to the established rule of law. (*Gilliam* v. *Guaranty Trust Co., supra.*)

The reasoning advanced by Judge RIPPEY to support the conclusion reached in the *Waring* case is equally applicable here. There the learned judge pointed out that the words " next of kin " used by the testator always meant the blood relatives and that at no time was a wife of a son deemed to be within that class. But the words " heirs at law " have exactly the same meaning as the words " next of kin," except that the words " heirs at law " denote the blood relatives who inherit the real property of an intestate whereas the words " next of kin " denote the blood relatives who inherit the personal property of an intestate. (*Tillman* v. *Davis*, 95 N. Y. 17, 24–30.) Paraphrasing the language of Judge RIPPEY, we may say here that the intent of the testator as to those who should participate in his estate is clear. With care and precision he provided that the bulk of the income from the trusts and the entire corpus of his estate should pass to his blood relatives. In the trusts created by the testator he defined these blood relatives as the heirs at law of the nieces and nephews. There is no meaning to be assigned to " heirs at law " except the class constituting the blood relatives. That is the primary significance of the expression. The purpose of those words was to exclude relatives not of the blood of the testator. The law includes within " heirs at law " any blood relatives as the class might be enlarged or diminished at the time of the life beneficiary's death by the laws of the State of New York then in force applicable to the testator's will.

In *Matter of Lake* (*supra*) the will, in disposing of the remainder after the death of the life tenants, the testator's widow and son, provided: " From and after the death of both my wife and my said son I give devise and bequeath the said share to the heirs-at-law of my said son." The will was executed in 1882; the testator died in 1884, and the son died in June, 1938. The son's widow, relying on the present article 3 of the Decedent Estate Law (as added by Laws of 1929, chap. 229) and also section 47-c of the same law (added by Laws of 1938, chap. 181, effective March 28, 1938), claimed that she was one of the distributees of the son's estate and as such came within the term " heirs at law " as used in the will. Surrogate FOLEY held that the provisions of this will brought it within the general rule laid down in the *Waring* case and that neither the new article 3, which makes the wife a distributee and gives her a share in both the real and personal property, nor

the new section 47-c, which declares that the words "heirs at law," "next of kin" and words of like import, shall mean the distributees defined in section 83 (of article 3), could be given retroactive effect so as to apply to the will or estate of a decedent who died before the new laws became effective.

In support of respondent's position both she and the surrogate stress the opinion of Surrogate FOLEY in *Matter of Bound (supra)*. The facts in that case are different from the facts here. There the testator directed that upon the death of the life beneficiaries without issue "the principal be disposed of according to the laws of inheritance and distribution of the State of New York." The learned surrogate properly held that by this language the testator clearly brought himself within the exception pointed out by Judge RIPPEY in the *Waring* case. But there is no analogy between the language used in the Bound will and in the will now before us.

Moreover, the new article 3 and the new section 47-c indicate they are not applicable to the instant will. Section 81 of article 3 states that "All distinctions between the persons who take as heirs at law or next of kin are abolished and the descent of real property and the distribution of personal property shall be governed by this article *except as otherwise specifically provided by law.*" In this case it has been "otherwise specifically provided by law," for section 21 of chapter 229 of the Laws of 1929 makes other specific provision with respect to the wills and estates of persons dying prior to September 1, 1930. Then again, section 47-c (which was added by Laws of 1938, chap. 181, for the purpose of overcoming the further dictum in Judge RIPPEY's opinion in the *Waring* case that next of kin are not distributees under the new article 3) expressly states that the terms "heirs at law," "next of kin" and words of like import, when used in a statute, will or other written instrument, shall be considered to mean the distributees under section 83, "unless the statute, the will or the instrument shall expressly or impliedly declare otherwise." In my opinion the will here impliedly, if not expressly, declares otherwise. (*Matter of Moffitt*, 171 Misc. 84; affd., 258 App. Div. 992; affd., 283 N. Y. 743.) The language of the quoted paragraph, read in the light of the other provisions of the will, plainly shows that the testator intended to confine the meaning of the words "heirs at law" solely to those who would be entitled to take real property under the law of descent as it existed prior to September 1, 1930, and that he deliberately sought to exclude every other person.

The next question is the proper allowance to be made for the services rendered by the deceased trustee, Robert T. Sheldon. In 1916 the court appointed him and the Irving Trust Company

as successor trustees to administer the unexecuted trusts. At that time the principal of the trust for the niece amounted to some $306,000. These trustees filed their first account in 1920. On that accounting the deceased trustee was allowed a commission of $1,625.95. That is the only allowance which he received. The trustees continued to administer the trust till 1939, from time to time making various investments and realizing a net profit of some $26,000. On June 30, 1939, the principal of the trust had an inventory value of some $316,000 and a market value of some $337,000.

On September 9, 1939, both trustees filed the present account covering the period from July 1, 1920, to June 30, 1939. On December 16, 1939 — after all those cited had appeared and filed their answers and while the matter was pending before the surrogate — Robert T. Sheldon died. His executrix thereafter was substituted as a party to the proceeding. On February 2, 1940, the surrogate rendered his opinion and on May 3, 1940, the decree settling the account was entered.

The surrogate fixed the compensation to which the deceased trustee is entitled on this accounting at $781.72 out of principal. The surrogate held that he is limited in the exercise of his discretion and that the only compensation which he may allow for the services of the deceased trustee is commission " at one-half the statutory rate for receiving those items of property which came into his hands and a like percentage for paying out those in the disbursement of which he had participated during his life."

There are some early cases which lend support to this ruling. They hold, in effect, that the surrogate has no discretion and can allow only the fees prescribed by statute (Surr. Ct. Act, § 285); that the statute allows commissions for receiving and paying out and, as the deceased fiduciary does not participate in the paying out by the surviving fiduciaries, the deceased fiduciary may not be allowed compensation for the disbursement of principal remaining at the time of his death. (*Matter of Ziegler*, 218 N. Y. 544, 555, 556; *Matter of Whipple*, 81 App. Div. 589; *Matter of Todd*, 64 id. 435.) Later cases, however, distinguish the above cases and definitely hold that while no allowance will be made in excess of the fees prescribed by statute, nevertheless the fees of fiduciaries are not allowed as a matter of course; that their allowance or disallowance rests in the sound discretion of the court to the extent that the court may refuse commissions altogether by reason of a fiduciary's misconduct, or that the court may grant reasonable compensation not exceeding the statutory rate for services performed by a deceased fiduciary prior to the complete adminis-

tration of the trust. (*Matter of Bushe*, 227 N. Y. 85; *Matter of Barker*, 230 id. 364.) Hence, it must be held that a deceased fiduciary is entitled to reasonable compensation measured by the value of the services which he rendered, not exceeding in any event the commissions fixed by statute; and that the fixation of such reasonable compensation rests in the sound discretion of the court.

On the facts presented in the instant case, the executrix of the deceased trustee is entitled to substantial, if not full, compensation. For almost twenty years the deceased trustee administered a trust in excess of $300,000. That he administered the trust faithfully, intelligently and profitably is not questioned. The only compensation which he received during this period is $1,625.95. The administration of the trust was virtually completed; the final account had been prepared and filed; all that remained was the entry of a decree and the distribution pursuant thereto. The executrix of the deceased trustee asks that his compensation be increased to $3,268.48, being three-fourths of the statutory amount. In view of the long period of efficient and faithful service rendered by the deceased trustee and that during the entire period he received an allowance of only $1,625.95, an allowance at this time of $3,268.48 is amply warranted.

The decree of the Surrogate's Court of Kings County, in so far as appealed from, should be reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion.

LAZANSKY, P. J., HAGARTY, CARSWELL and ADEL, JJ., concur.

The decree of the Surrogate's Court of Kings County, in so far as appealed from, is reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the matter is remitted to the Surrogate's Court to proceed in accordance with the opinion of JOHNSTON, J.