ESTATE OF PORTER: ATWOOD and another, Executors, Appellants, vs. COLTON and others, Respondents.

*May 19—June 12, 1941.*

For the appellants there were briefs by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* attorneys, and *Thomas W. Ehrlinger* of counsel, all of Janesville, and oral argument by *Mr. Ehrlinger.*

For the respondents there was a brief by *Alvin M. Loverud,* and oral argument by *Edward Mennes,* both of Stoughton.

FOWLER, J.   Susan M. Porter died March 27, 1939, leaving a will which was duly admitted to probate, of which the appellants are the duly appointed executors.   They ask for construction of the paragraph of the will providing for distribution of the residue of the estate remaining after the specific legacies and bequests are paid and effectuated.   The will was executed in February, 1926.   The testatrix then had living kin as follows : One brother, her sole next of kin, insane, who survived her, but has since died, for whose care during life she made definite provision, which the executors have fully carried out.   Her kin next to her brother living at her death were first cousins, four in number, eleven children of two first cousins who died previous to the execution of the will, and twenty-four children and two grandchildren of nine of her first cousins who were living when the will was executed but predeceased the testatrix.   She bequeathed the residue to the thirteen first cousins who were living when the will was made, and the children of the two first cousins who had previously died who should survive her. She specifically named in the residuary clause the thirteen cousins living when the will was executed, and the two first cousins who predeceased her but did not name in the bequest the children of the two cousins then deceased.   The testatrix knew of the death of the nine first cousins who predeceased her. The will, after providing for her brother and giving specific legacies and devises to some specifically named second cousins with whom the testatrix was most intimate and had had most contact, directed that the residue at her brother's death should be disposed of as shown by the tenth paragraph of the will set out in the margin.[1]

---

[1] "Tenth.   All the rest, residue and remainder of my estate, I direct be divided in equal shares among my cousins, hereinafter named, to wit, Helen R. P. Richardson, W. B. Porter, Amy C. Richardson, Joseph B. Porter, John P. Porter, Henry Porter, Anna Porter Soverhill, William O. Colton, Mary Tobie, Justin Wheeler, Edith

The trial court adjudged that by the residuary clause the eleven children of the two first cousins of the testatrix who died prior to the execution of the will took *per capita* an equal share with the four first cousins who survived the testatrix, and that the children of each of the nine first cousins living at the time of the execution of the will but who predeceased the testatrix took *per stirpes* the share that the parent would have taken had the parent survived the testatrix, and ordered distribution accordingly.

In making this distribution the court was largely governed by the rule stated in *Will of Asby,* 232 Wis. 481, 487, 287 N. W. 734, as follows:

"However, it appears that the great majority of the courts have recognized and followed the rule of construction that if a testamentary gift is made to one or more persons named and the children of another person, as for instance, to A and the children of B, the persons entitled will, in the absence of anything to show a contrary intention, take *per capita,* and not *per stirpes.*"

Traver, Alice Traver Libby, Don Roderick and the children of John Edmond Colton and Mina Tobie who survive me.

"To restate the terms of this, my last will, I direct that all my debts, funeral expenses and the expenses of administering my estate be paid first; that Evan B. Porter shall have my diamond ring; that Cora Soverhill Atwood shall have my house and lots together with the contents of the house of Cooksville, Wisconsin; that all the balance of my estate after the expenses and specific legacies are paid, shall be by my trustees, hereinbefore appointed, to wit: Cora Soverhill Atwood and Charlie Star Atwood, taken possession of, kept invested in safe, interest-producing securities, the income therefrom to be paid to or for the support of my brother, Isaac Frank Porter; and in case the income from said estate shall prove insufficient for the proper care and support of my said brother, then and in that event, I direct my said trustees to use such portion of the body of my estate as may be necessary for the proper care of my said brother. That upon the death of my brother, I direct that my trustees shall distribute the balance of my estate as hereinbefore directed, to wit: Three thousand dollars ($3,000) to Cora Soverhill Atwood; one thousand dollars ($1,000) each to Mrs. Clara Light, Joseph K. P. Porter, Potter Porter and Lloyd Porter; the balance to be divided among my cousins, hereinbefore enumerated."

Of the rule above quoted it is stated in *Will of Morawetz*, 214 Wis. 595, 598, 254 N. W. 345:

"While, as indicated in the note referred to [16 A. L. R. 15], the general rule originally was that under such circumstances the distribution was *per capita* instead of *per stirpes*, a very slight circumstance is sufficient to overcome the rule."

The rule in the *Morawetz Case, supra,* as to what will overcome the presumption relied on by the county court is fully borne out by annotations in A. L. R., citing and stating all the cases bearing on the proposition. We do not deem it necessary to discuss that rule further. The notes referred to will be found in 16 A. L. R. 98; 31 A. L. R. 805; and 126 A. L. R. 179. Without further discussion we will state the circumstances which in our view overcome the presumption in favor of *per capita* as against *per stirpes* distribution in the instant case and show the actual intent of the testatrix, which of course must govern if that intent is discoverable from the terms of the will and the circumstances bearing upon that intent.

The use of the word "children" in a bequest to the children of a named person implies, generally speaking, a *per stirpes* distribution. When the testatrix provided that the children of the two deceased cousins who should survive her should share in the residue she presumably meant that they should take *per stirpes* the parent's share had the parent lived. The phrase "divided in equal shares" used early in paragraph tenth "divided in equal shares among my cousins" stands in the will far distant from "the children of . . . [the two deceased cousins]." A phrase by familiar grammatical construction is to be construed as relating to its nearest antecedent. The nearest antecedent of "divided in equal shares" is "my cousins hereinafter named." The cousins hereinafter named were first cousins, including the two deceased cousins. The children of the two deceased cousins were not "hereinafter named." This detracts from the force that might otherwise properly

be given to the phrase "divided in equal shares." The word "cousin" unless qualified implies first cousins as distinguished from cousins farther removed. It is true that the testatrix in speaking of children of her first cousins ordinarily referred to them as cousins, but this seems not of much significance. One addressing a letter to a second cousin would ordinarily address it "My dear cousin" rather than "My dear second cousin." So of speaking of a second cousin, the qualifying word "second" would ordinarily not be used unless particularly to designate the degree of the cousinship. The children of the cousins who were living when the will was executed who predeceased the testatrix were numerous. They take *per stirpes* under sec. 238.13, Stats. *Will of Griffiths,* 172 Wis. 630, 179 N. W. 768. They take *per stirpes,* if at all. They were as well even better known to the testatrix than the children of the two cousins of the testatrix who died before the will was made. It is not likely that the testatrix intended that the children of the two would take more or differently than the children of the named then living first cousins who might predecease her. Had she so understood it is likely that she would have changed her will to put upon the same basis all the children of her first cousins who predeceased her, except those whom she especially preferred by giving them specific legacies or devises. On the whole it would seem that the testatrix did not intend that her second cousins should take equally with her first cousins. As she provided specific legacies for such of her second cousins as she wished especially to prefer over her other relatives, it is not likely that she intended any especial bounty to any others of her second cousins. By her statement in the conclusion of the long repeater paragraph of the residuary clause "among my cousins hereinbefore enumerated" she meant first cousins. She had not enumerated any second cousins. Her natural thought was that, the two cousins being dead, their children

should have their share. The will, with the aid of sec. 238.13, Stats., provided for all her legal heirs. She most likely meant to give the residue as the law would give it were there no will. All this convinces us that the residuary clause must be construed as giving *per stirpes* to the children of the two cousins who died before the execution of the will the share their parents would have taken had they not predeceased her.

As stated in *Rose v. Ruggles,* 137 Wis. 439, 443, 119 N. W. 97:

"There is usually little gain from discussion of different theories of construction of language used in a will."

The reviewing court, to paraphrase the language next following that above quoted, carefully studies the provisions of the will under construction, separately and in their context correlative with each other, and becomes persuaded that the intention of the testator was as it declares, rather than as it was declared by the judgment that it is reviewing.

It is urged by counsel for the children of John Edmond Colton, one of the two cousins of the testatrix who died before the will was made, that these children each take equal shares with the first cousins who survived the testatrix, because the will created a class of beneficiaries of the residue, and that the share of the members of the class who predeceased the testatrix lapsed and the members of the class who survived took all. That question is not before us because of the dismissal of the appeal of said children for the reasons hereinafter stated. However we will say that it seems to us altogether unlikely that the testatrix ever intended such result. We also observe that it seems clear to us that the clause "who survive me" at the end of the first paragraph of the part of the will under construction, relates to the "children of John Edmond Colton and Mina Tobie" as the nearest antecedent of the clause, and not to the named first cousins of the tes-

tatrix who were living when the will was executed. *Will of Griffiths, supra; Estate of Bloch*, 227 Wis. 468, 278 N. W. 875.

Passing to consideration of the attempted appeal by the children of John Edmond Colton next above referred to, that appeal was taken pursuant to an order of the county court extending the time in which they might perfect an appeal from the judgment, from which order the executors duly appealed. The executors duly served their notice of appeal on the attorney of the said Colton children on December 31, 1940. Sec. 274.12, Stats., provides that when one party has appealed from a judgment any other party desiring to appeal must perfect his appeal within thirty days from the time the notice of such appeal is served upon him, unless such other party for cause shown during the thirty days' period has procured an order extending the time. The said Colton children served notice of appeal from the judgment on February 27, 1941, more than thirty days after service upon them of the notice of the executors' appeal. The court on March 8, 1941, entered an order extending the time to ten days from March 8th, in which the said Colton children might perfect their appeal. The executors move for dismissal of that appeal because no cause for the extension of time was shown and the extension was granted after expiration of the thirty-day period.

The point is clearly ruled by the recent decision in *Ledvina v. Ebert*, 237 Wis. 358, 296 N. W. 110, 117, 118, and we see no need to review or repeat what we there said. That ruling was made in a circuit court case. But under sec. 324.04 (4), Stats., "The law and rules of practice relating to circuit courts" govern in appeals from the county court. *Estate of Bailey*, 205 Wis. 648, 238 N. W. 845. The order extending the time to appeal was erroneous and must be reversed and the motion to dismiss the appeal must be granted.

*By the Court.*—The judgment of the county court is reversed, and the record is remanded with directions to enter

a judgment in accordance with this opinion. The order of the county court extending the time for the children of John Edmond Colton to appeal is reversed, and their appeal is dismissed.