WILL OF BRAY: DOHENY, Appellant, vs. CRAWFORD and others, Respondents.

*October 10—November 6, 1951.*

For the appellant there was a brief by *Charles A. Wilson* of Superior, and *A. W. Richter* of Milwaukee, attorneys, and *Stetson & Jacobson* of Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Richter*.

For the respondents there was a brief by *Crawford & Crawford,* and oral argument by *Arthur Cirilli,* all of Superior.

CURRIE, J. Paragraph "Second" of the will provided that upon the death of the testator's wife distribution should be made of the principal of the trust fund "to my heirs and next of kin in equal shares" excepting the sister, Mary. The trial court, in its last judgment, from which the present appeal is taken, has in effect construed this provision of the will to require a *per stirpes,* and not a *per capita,* distribution of the trust estate among Etha Doheny (the sole survivor of the four persons constituting the next of kin and heirs at law of testator at the time of his death) and the heirs of the three other persons, who constituted the heirs at law and next of kin of testator at the time of his death, but which three other persons died subsequent to testator.

The appellant, Etha Doheny, contends that the words *"in equal shares"* required a *per capita* distribution to be made so that as of the testator's death a one-fourth interest in the trust remainder vested in each of the following:

Margaret Flinn, sister
Neil Bray, brother
Cornelius Dwyer, nephew
Etha Doheny, niece.

In the first place the trial court is in error in attempting to differentiate and classify Margaret Flinn and Neil Bray

as "next of kin" and Etha Doheny and Cornelius Dwyer as "heirs" of the testator, when all four were at the same time both next of kin and heirs at law of the testator.

In the cases of *Flint v. Wisconsin Trust Co.* (1912), 151 Wis. 231, 138 N. W. 629, and *Will of Cowley* (1904), 120 Wis. 263, 97 N. W. 930, 98 N. W. 28, this court has held that the word "heirs" means those persons who would be entitled to inherit real estate under the law of descent. In the case of *Perry v. Scaife* (1905), 126 Wis. 405, 105 N. W. 920, the scope of the term "next of kin" was considered and the court said at page 409, "It is clear, at least, that it includes those entitled to take the personal estate in case of intestacy." In the New York case of *Matter of Battell* (1941), 261 App. Div. 120, 127, 24 N. Y. Supp. (2d) 712, the court stated:

"But the words 'heirs at law' have exactly the same meaning as the words 'next of kin,' except that the words 'heirs at law' denote the blood relatives who inherit the real property of an intestate whereas the words 'next of kin' denote the blood relatives who inherit the personal property of an intestate. *Tillman v. Davis,* 95 N. Y. 17, 24–30, 47 Am. Rep. 1."

While the technical meaning of "heirs" and "next of kin" is as above stated, the terms "heirs" and "heirs at law," are frequently used as being synonymous with "next of kin" in legal instruments describing persons who are to take interests in personal property.

The use of the words *"in equal shares"* in paragraph Second of the will, if given their ordinary meaning, would seem to call for a *per capita,* and not a *per stirpes,* distribution among the remaindermen living at the time of death of testator, so that each of such four remaindermen would have had a vested interest in a one-fourth part of the trust remainder as of the death of testator. Counsel for respondents contend, and cite authorities in support of their conten-

tion, that the use of the words "heirs" and "next of kin" in a will infer a *per stirpes,* and not a *per capita,* distribution, but we are of the opinion that the words "in equal shares" by testator rebuts any such inference.

In the early case of *Daggett v. Slack,* (1844), 49 Mass. (8 Metc.) 450, testator bequeathed certain property to the "legal heirs" of his late brother. At the time of his death there were twenty heirs of his deceased brother surviving, six being children and fourteen being grandchildren; three of the grandchildren being children of a deceased son, and eleven being children of a deceased daughter. The question arose whether distribution should be made among these twenty heirs *per stirpes* or *per capita,* and Mr. Chief Justice SHAW in his opinion held that the law presumed that by reason of the use of the word "heirs" the distribution was *per stirpes* and not *per capita.* In discussing such opinion he stated (p. 454):

"Such presumption, however, will be easily controlled, by any words in the will, indicating a different intention of the testator; as if, after a devise to 'heirs,' it be added, 'in equal shares,' or 'share and share alike,' or 'to them and each of them,' or 'equally to be divided,' or any equivalent words, intimating an equal division, then they will take *per capita,* each in his own right. But when there are no such words, the presumption is, that the testator referred to the familiar law of descents and distributions, to regulate the distribution of his bequest."

However, the courts in cases decided subsequent to *Daggett v. Slack, supra,* have not all followed the dictum announced by Mr. Chief Justice SHAW to the effect that if a devise is made to "heirs," and there be added words such as "in equal shares," or equivalent words intimating an equal division, such heirs take *per capita.* The cases on this question are to be found in annotations appearing in 16 A. L. R. 15, 31 A. L. R. 799, 78 A. L. R. 1385,

126 A. L. R. 157, and 13 A. L. R. (2d) 1023. There are a substantial minority of cases which have held that expressions such as "share and share alike," or "equally" do not require a *per capita* division where the legatees or devisees are in unequal degrees of relationship and have construed such a bequest or devise as requiring a *per stirpes* distribution by construing the testator's intention to be that the direction as to equality was intended to mean equality within the particular group.

The two leading cases in Wisconsin are *Will of Asby* (1939), 232 Wis. 481, 287 N. W. 734, and *Estate of Porter* (1941), 238 Wis. 181, 298 N. W. 624.

In *Will of Asby, supra,* testatrix bequeathed the residue of her estate "share and share alike, to Arthur Wilkins and the grandchildren of William Asby, my late husband, surviving me at the time of my decease." Arthur Wilkins was the nephew of testatrix, and the testatrix was the second wife of William Asby, and not a blood relative to his grandchildren. The court in its decision stated that there apparently was much confusion in the decisions of courts in construing wills for the purpose of determining whether the legatees should take *per capita* or *per stirpes* "if the facts of each case are not kept in mind and their distinguishing features noted." The court came to the conclusion that a *per capita* distribution was required and stated (p. 487):

"However, it appears that the great majority of the courts have recognized and followed the rule of construction that if a testamentary gift is made to one or more persons named and the children of another person, as for instance, to A and the children of B, the persons entitled will, in the absence of anything to show a contrary intention, take *per capita,* and not *per stirpes.* . . .

"It also appears that the courts are practically unanimous in holding that when the language of a will directs that legatees shall take 'equally' or 'share and share alike,' such language imports a division *per capita.*"

In *Estate of Porter* (1941), 238 Wis. 181, 183, 298 N. W. 624, the will of testatrix contained the following residuary clause:

"All the rest, residue, and remainder of my estate, I direct be divided in equal shares among my cousins, hereinafter named, to wit, Helen R. P. Richardson, W. B. Porter, Amy C. Richardson, Joseph B. Porter, John P. Porter, Henry Porter, Anna Porter Soverhill, William O. Colton, Mary Tobie, Justin Wheeler, Edith Traver, Alice Traver Libby, Don Roderick and the children of John Edmond Colton and Mina Tobie who survive me."

John Edmond Colton and Mina Tobie were first cousins of testatrix who had predeceased her. The court in its decision stated that only a very slight circumstance is required under such a fact situation to overcome the presumption that a *per capita* distribution was intended, and stated (p. 185):

"The use of the word 'children' in a bequest to the children of a named person implies, generally speaking, a *per stirpes* distribution. When the testatrix provided that the children of the two deceased cousins who should survive her should share in the residue she presumably meant that they should take *per stirpes* the parent's share had the parent lived. The phrase 'divided in equal shares' used early in paragraph tenth 'divided in equal shares among my cousins' stands in the will far distant from 'the children of . . . [the two deceased cousins].' A phrase by familiar grammatical construction is to be construed as relating to its nearest antecedent. The nearest antecedent of 'divided in equal shares' is 'my cousins hereinafter named.' The cousins hereinafter named were first cousins, including the two deceased cousins. The children of the two deceased cousins were not 'hereinafter named.' This detracts from the force that might otherwise properly be given to the phrase 'divided in equal shares.' The word 'cousin' unless qualified implies first cousins as distinguished from cousins farther removed."

The court's conclusion was that testatrix intended a *per stirpes* distribution in so far as the children of the two deceased cousins were concerned.

The facts in the case of *Estate of Porter, supra,* are readily distinguishable from those in the present case, as they are from the facts in the case of *Will of Asby, supra.* There are no special facts in the present case which would rebut the presumption arising from the use of the words "in equal shares" as requiring a *per capita,* and not a *per stirpes,* distribution.

In the recent New York case of *O'Hanlon's Will* (1941), 27 N. Y. Supp. (2d) 889, 903, testator used the expression "share and share alike" and the court, in referring to the same, stated: "This has been generally held to indicate a *per capita* distribution being expressive of an intention upon the part of the testator that the devisees shall take equal shares regardless of consanguinity. *Bisson v. West Shore R. Co.* 143 N. Y. 125, 38 N. E. 104; *In re Droney's Estate,* 231 App. Div. 674, 248 N. Y. Supp. 449; *In re Ives' Estate,* 161 Misc. 60, 291 N. Y. Supp. 981; *Stevenson v. Lesley,* 70 N. Y. 512; *Matter of Verplanck,* 91 N. Y. 439." We believe that this is a correct statement of the general rule which should be applied in cases of this kind where there is nothing in the will itself to indicate a contrary intention on the part of the testator to that of a *per capita* distribution. The mere fact that the persons named or designated to take as legatees or devisees are of different consanguinity to testator is not sufficient in itself to rebut the presumption that a *per capita* distribution was intended by reason of the use of words such as "in equal shares," or "share and share alike," or any other equivalent words intimating an equal division.

We therefore conclude that paragraph Second of the last will and testament of the testator should be so construed as

to provide that as of the date of death of the testator on December 20, 1917, the following four persons, to wit: Margaret Flinn, sister; Neil Bray, brother; Cornelius Dwyer, nephew; and Etha Doheny, niece; each had a vested one-fourth interest in the remainder trust estate, the use and enjoyment of which was postponed until the death of Winifred Bray, the life beneficiary.

Margaret Flinn, Neil Bray, and Cornelius Dwyer have all died in the meantime subsequent to the death of testator, and the trial court, in the judgment from which the present appeal was taken, provides that certain persons (naming them), whom the record discloses are the heirs at law of the three deceased remaindermen, "shall inherit" the respective shares of their deceased remaindermen. There is no provision in the will as to what disposition should be made of the interest of an heir or next of kin who should die subsequent to the testator. Therefore the vested interests of the remaindermen were assets of their respective estates, disposable by will by them in the event of their death, and also subject to any claims of their creditors which might be allowed against their estates. While the question is not before us on this appeal, it would appear that the shares of the deceased remaindermen would be properly distributable to their respective estates upon the closing of this estate.

*By the Court.*—Judgment reversed and cause remanded with instructions to construe the will as herein indicated.