S. Samuel Di Falco, S.
At a conference of counsel prior to the first hearing in this contested accounting proceeding, certain objections were disposed of by agreement. With respect to the objections filed by the widow: The first objection is sustained by consent and the executor is surcharged in the sum of $250. The second objection involves the same item and requires *184 no separate ruling. The third objection is sustained by consent; the books referred to therein, are to be included in the assets of the estate; the value is to be fixed at a later time if it is relevant to the widow’s elective share. Objections 4, 5 and 6 are withdrawn. The executor agreed to amend the account to meet objection 7. Objections 8, 9, 10, 12, 13 and 14 were left for determination after hearing. Objection 11 is to be reserved for determination at the end of the case.
With respect to the objections filed by Sibyl Welling Eeichel: Objections 1, 5, 8, 12 and 16 relate to commissions and were agreed to be reserved for determination upon the settlement of the decree, subject to the objection against any award of commissions to him. Objection 6 will be disposed of by the submission of an affidavit of legal services and fixation by the court of a reasonable fee. Objection 7 is reduced to $200 and will be at issue at the reduced figure. Objections 2, 3, 4, 9, 10, 11, 13, 14 and 15 were left for determination after hearing.
It was also agreed by counsel that the election of the widow is not contested, that her election will be allowed, and that her intestate share will be charged against the trust under article Second of .the will of which objectant Sibyl Eeichel is remainderman.
A trial of all of the remaining issues has now been completed. The following rulings are made on the objections filed by the widow: The third objection was sustained by agreement, leaving only the value of the library to be determined insofar as that value will affect the widow’s elective share. No testimony as to the value of the library was produced at the hearing. Acting on behalf of her mother who was not represented by counsel, the objectant, Sibyl Eeichel, served a notice upon the executor to admit that the fair and reasonable value of the law library was not less than $4,500. The executor made no answer to that demand and no sworn denial of the matter contained in the request for admission. Under the terms of the statute, each of the matters of which an admission is requested is deemed admitted unless the adverse party submits a sworn statement denying the matter or setting forth the reasons why he cannot admit it. (Civ. Prac. Act, § 322; 6 Carmody-Wait, New York Practice, p. 312.) Under all of the circumstances, the request for the admission of the value of the property was reasonable. The executor not only filed no answer to the request for admission of the fact, but he produced no evidence. Moreover, Schedule H of the main account lists the value of the library at $4,500. The executor argues in his brief that the value of the books was fixed by appraisal in the tax proceeding. However, Schedule A *185 of the account and the tax file indicate that the appraisal related to ‘ ‘ Office Furniture and Equipment ”, or “ Office Furniture and Fixtures ”, and not the books in the library. Schedules F and H of the main account make a distinction between the furniture and the library, and the latter schedule, as stated above, places a valuation upon both.
The court, therefore, rules that for the purposes of fixing the value of the widow’s elective share, the fair and reasonable value of the law library will be taken at $4,500.
The eighth and ninth objections are directed to unreasonable delay in making payment of the widow’s share. At the hearing, it was conceded that payments to the widow had been delayed. Letters testamentary were issued on August 14, 1952. It is claimed that the assets' were liquidated within seven months and that distribution could then have been made. The executor did not produce any contradictory evidence at the hearing. The main account shows assets on hand of $62,133.37, of which all but $560 consisted of cash. It reveals also that by April 1, 1953, less than eight months after issuance of letters, all stocks and bonds had been sold except for bonds valued at $560.
The testimony at the hearing reveals the fact that this estate has not been efficiently administered. The executor is without any records to explain the estate transactions. Large sums have been withdrawn from one depositary and were not placed in another depositary for an unreasonably long period of time. There is no explanation why the funds were not kept on deposit in the name of the estate and why large sums cannot be traced from one depositary to another. The executor contends that the 'estate records were kept by an accountant who is now dead, that the records cannot be located, and that the executor has been unable to obtain records of estate transactions. The responsibility for keeping proper records rested upon the executor. He has failed to discharge that responsibility. He is unable to give a satisfactory explanation of the reasons for withdrawals from bank accounts and the purpose for which the funds were used.
The widow was originally given only an interest in income of a trust fund. She filed a notice of election and at some point of time, her right to elect .to take against the will was conceded to be valid. The present record does not show the date upon which the election was determined by the parties to be valid. Obviously the executor could not have made any payments of principal to the widow prior to the time her right of election was conceded. The basis of her right to elect to take her entire share outright does not appear in this record, although her right to do so is conceded. The executor would have been justified in seek *186 ing a judicial determination of the widow’s right and fixation of her share. He did not do so. The widow was forced to initiate a compulsory accounting proceeding, and even then the executor was dilatory in making payments. He obtained an adjournment of the hearing of the issues herein upon condition that he would make certain payments to the widow, and although there was more than sufficient cash to make such payment, he failed to perform the condition as promised.
The court holds that the executor is guilty of unreasonable delay in making payments to the widow. It fixes 18 months after issuance of letters (Feb. 14, 1954) as a reasonable period for the executor to have determined the widow’s rights. Payments reported in the account indicate that by that time at the very latest, the executor recognized the widow’s right to take her share outright.
The court notes from the files in this estate that there were two claims that had been rejected, one for $80,000 and one for $1,333.33. A proceeding was instituted in May, 1954 for the disallowance of these claims. There was difficulty in locating the claimant having the larger claim. Citation was returnable on January 21, 1955. She defaulted. The smaller claim was litigated. An order dismissing the claims was made on May 6, 1955. The person having the claim for $1,333.33 appealed to the Appellate Division. His .appeal was dismissed by order dated January 27, 1956. It appears, therefore, that the executor might have been justified in withholding $85,000 until February 1, 1955 and in holding until February 1, 1956 a small sum to meet the other possible claim. The executor does not argue in this proceeding that these claims justified his withholding any funds or that they in any way affected his administration. Indeed, it is charged by the objectant Eeichel, who rendered legal services to the estate, that the executor failed to appear at the hearing on these claims.
The account indicates to the court that in June, 1954 and in September of that year, the executor made distributions to himself and his sister, without making prorata distributions to both objectants. A very substantial distribution was made to his sister on November 1, 1954. At this time he was not at all concerned with the rejected claims.
The court, therefore, fixes November 1, 1954 as the date when the delay in making distribution became unreasonable.
The widow is entitled to interest at the average rate of return on the estate investments up to November 1, 1954 and is entitled thereafter to income at the rate of 6% up to the dates of the *187 respective payments, including the amounts to be distributed under the decree herein.
The tenth objection is dismissed for failure of proof.
The twelfth and thirteenth objections demand that the executor be surcharged for payments made to himself and to his sister as residuary legatees and to himself as an advance payment on account of commissions, without making equitable and prorata payments to the widow. The executor had no right to withdraw commissions without court approval, and he will be surcharged with interest at the rate of 6% from the date of withdrawal to the date of repayment of such amount or to the decree herein.
The account would seem to indicate that up to November 1, 1954, distributions to the widow were not inequitable as compared to distributions to two of the residuary legatees. After November 1, 1954, the surcharge for delay in payments will remedy any inequity in the timing of distributions. The twelfth and thirteenth objections are, therefore, overruled . except with respect to the unauthorized withdrawal of commissions.
The fourteenth objection is overruled for failure of proof.
The following rulings are made on the objections filed by Sibyl W. Eeichel: The second objection is to the failure to include income and capital gains actually realized. No proof was produced as to any realized sums not reported in the account. The third objection raises the same issue as the fourteenth objection, and will be considered with it.
The fourth objection is to the damage to the estate caused by the late payment of the Federal estate tax. No reason for the delay has been given. The objection is sustained. The account does not separately state the interest and penalty. The amount of the surcharge on this objection will be reserved for determination on the settlement of the decree. The reasonable compensation of the objectant for legal services rendered to the executor is fixed and allowed in the total sum of $4,250. In fixing her total compensation, the court has not allowed any compensation for services rendered in collecting the accounts receivable. These accounts were specifically bequeathed to the objectant. Any expense incurred in collecting them should be charged wholly against the proceeds and not against the general estate. The fixation of her fee disposes of the sixth objection.
The seventh objection relates to a charge made by the executor against her legacy of all accounts receivable, representing legal services rendered by the testator during his lifetime. The account states that from the total of the accounts receivable, there should be deducted $450 legal fees incurred in connection *188 therewith. The objection was to the deduction of $450. The amount objected to was reduced to $200 by consent. Neither side offered any proof. The objectant’s notice to admit called upon the executor to admit that the estate does not have now and did not have any offset against the Richmond Hill Development Corp. account. The executor ignored the notice. He does not even advert to the objection in his brief. There being no apparent dispute, the court understands the charge of $200 as allocated against the Richmond Hill Development Corp. account receivable, and there being no valid charge against that item, the objection, as amended, is sustained.
The ninth objection is to the payment by the executor of a sum on account of commissions, without allowance by the court. The executor had no right to retain commissions without an order of the court, and he must be surcharged with interest at the rate of 6% from the date of withdrawal to the date of the decree herein, or the date of repayment if he should earlier repay that sum.
The tenth objection relates to rights of other legatees than the objectants. Insofar as the objectant is concerned, the fourteenth objection raises the same issue. Insofar as other legatees are concerned, it is overruled because the objectant has no financial interest in the matter.
The eleventh objection is sustained in part. The executor is not able to show- that estate funds were kept on deposit during the entire estate administration. The executor denies that he used the funds for his own personal use. The delay in depositing the sum of $4,732.43 in the Franklin Savings Bank after withdrawal of that sum from the Guaranty Trust Company account is without justification. The executor will be surcharged for the loss of interest on the funds so withheld. The court fixes the surcharge at 6% from March 25, 1955 to July 18, 1955. It is charged that other sums withdrawn from estate accounts do not correlate with any other deposits or disbursements. The executor is unable to state the use to which any such withdrawal was placed, except to say generally that he probably used all of them to pay expenses, debts or distributive shares. The sum of $20,000 was withdrawn from Irving Trust Company on March 5, 1953. From the same account, the following withdrawals were made: $10,000, May 20, 1953; $10,000, May 25, 1953; $3,000, February 1, 1954; $25,000, May 5, 1954; $5,000, October 21, 1954; $4,000, October 11, 1955; $1,000, September 13, 1956; $2,000, December 18, 1957 and $3,000 on November 19, 1957. The sum of $10,000 was withdrawn from the Savings *189 and Loan account on August 21, 1952. From the Union Dime Savings account, $11,040.46 was withdrawn on December 4, 1956. No vouchers have been produced. There are no disbursements in the accounting corresponding to these withdrawals. It is incumbent upon the executor to explain the use made of these moneys and to meet the charge of his having used them personally. The court will surcharge the executor 6% on each sum from the date of withdrawal to the date when these funds were devoted to an estate purpose or were redeposited. The executor may file a supplemental affidavit tracing these funds and showing the use to which they were placed. The affidavit shall also show the date of receipt of the proceeds of the New York Majestic bonds and the date of the deposit thereof and the date of receipt and date of deposit of the proceeds of sale of the Bon Ami stock.
The thirteenth objection is overruled for failure of proof. The fourteenth objection is sustained and the court holds that the executor’s delay in making payments to the objectant was unreasonable. The court fixes November 1, 1954 as the date when the delay in making distribution became unreasonable. The objectant is entitled to interest at the average rate of return on estate investments up to November 1, 1954. She is entitled to interest on her residuary legacy at the rate of 6% from that date until the dates of payment of that legacy.
The objectant is also entitled to the proceeds of the accounts receivable which came into the hands of the executor. These sums should have been paid to the residuary legatee promptly. The accounts indicate that the sums were paid to the legatee, although times of payment were not given. They also indicate later collections of accounts without specifying the dates of collection. It is not possible on this record to say whether there has been unreasonable delay in paying the proceeds of these accounts. The executor will file a supplemental affidavit showing the date of receipt of the proceeds of the accounts and the dates of payment to the specific legatee. The amount of the surcharge, if any, for unreasonable delay in paying these amounts will be reserved for determination upon the settlement of the decree. The ruling on this objection disposes also of objection third.
The fifteenth objection, insofar as it relates to payment on account of commissions, raises the same issue as the ninth objection, and requires no additional ruling. Insofar as it relates to unequal distribution to residuary legatees, the ruling on the fourteenth objection will compensate the objectant for *190 delay in making distribution to her, except that, in addition, she will be entitled to interest at the rate of 6% on $5,000 of her residuary legacy from June 16, 1954, the date on which the executor paid a like sum to his sister, whose residuary share is equal to that of objectant.
The court has reserved for determination on the settlement of the decree various objections relating to computation of commissions, but subject, however, to the objection to the allowance of any commissions. The court finds that the executor was negligent in administering the estate, that he unreasonably delayed distribution, he failed to make payments to the widow even when directed to do so by the court, he is unable to explain satisfactorily his transactions in the handling of estate assets, he has failed properly to account for his transactions, he has been guilty of a cynical disregard for the rights of the beneficiaries and his actions and omissions have resulted in loss and expense to the objectants. The court holds that, in the exercise of its discretion, a disallowance of commissions to the executor is required. (Matter of Bloomingdale, 172 Misc. 218, 229; Matter of Schneider, N. T. L. J., Oct. 11, 1940, p. 1047, col. 1 [Foley, S.], and cases cited.)
In paying to objectants interest on their legacies at 6%, the executor will first pay such interest from the income earned by the estate assets allocable to each of these shares during the period of the unreasonable delay. To the extent that the estate assets allocable to such shares during that period did not earn sufficient income to make such payments, the executor is surcharged in an amount sufficient to pay such interest.
The objectant Eeichel filed earlier objections. The first objection is the same as the widow’s first objection and is disposed of by the agreement on that objection. The second objection was not taken up at the hearing and is apparently abandoned. The remaining objections are embraced within the objections ruled upon hereinabove.
The objectant argues in her brief that the executor should be surcharged for disbursements alleged to have been made to M. O. Schechter on the ground that he failed to substantiate them by vouchers. No objection was made to these disbursements, and there was thus no issue raised respecting them.
The petitioner asks that the compensation of the present attorneys for the executor be fixed in the sum of $1,000. No affidavit of legal services has been submitted. The fixation of their compensation will be reserved until the settlement of the decree. The petitioner also asks that the compensation of M. C. *191 Schechter be fixed in the sum of $850. He appears to be the accountant, now deceased. No proof has been offered as to the value of his services and his claim for compensation is dismissed.
Submit decree on notice settling the account accordingly.