Joseph A. Cox, S.
Letters testamentary under the will of Marion D. Brush were granted by a decree dated August 26, 1958 to Jane W. Brush, the testatrix’ sister-in-law, and Friend L. Tuttle, an attorney. Jane W. Brush died in September, 1960 and letters testamentary under her will were granted to Friend L. Tuttle on November 16, 1961.
In late 1961 a legatee under the will of Marion D. Brush petitioned to compel Tuttle to render an account as the surviving executor under that will. In January, 1962 an order was made directing the executor to account. Thereafter the executor filed a notice of appeal to the Appellate Division. Sometime later he satisfied this legatee. On July 31,1962 an order was made directing Friend L. Tuttle to render an account as the executor of the estate of Jane W. Brush. On February 19,1964 an order of commitment was made by reason of the failure of Friend L. Tuttle to comply with an order directing him to account in the estate of Marion D. Brush. 'Compulsory accountings in each estate now are before the court and since the issues in the two estates are intertwined these issues have been treated together.
The will of Marion D. Brush bequeathed wearing apparel, jewelry, personal effects and household furnishings to Jane W. Brush, $1,000 to a maid, $5,000 to a cousin and $10,000 to Friend L. Tuttle and his wife. The residuary estate was bequeathed in trust for the benefit of Jane W. Brush with direction that upon her death $25,000 be paid to The House of the Holy Comforter and the balance of the trust remainder be paid to Friend L. Tuttle.
The will of Jane W. Brush, which was prepared by Friend L. Tuttle, provided a number of specific bequests, two general legacies of $500 each, a $1,000 legacy to Friend L. Tuttle and bequeathed $25,000 to The House of the Holy Comforter. The will expressed a wish and intention that the $25,000 legacy to this charity be accepted in lieu of the legacy bequeathed in the will of Marion D. Brush to the same charity. This legacy was conditioned upon the legatee completely releasing the Marion D. Brush estate and the most interesting condition is that, in the event such release should not be given, the sum of $25,000 be paid to the estate of Marion D. Brush. The cumulative effect *279 of these conditions was to assure that Friend L. Tuttle would receive the full residuary principal of the Marion D. Brush estate undiminished by the bequest to the charity. If the charity were to receive its $25,000 legacy from the Marion D. Brush estate, such payment would be reimbursed from the Jane W. Brush estate and would come to Tuttle. If the charity accepted payment of its $25,000 legacy from the Jane W. Brush estate, the residuary estate of Marion D. Brush was left intact for Tuttle. The Jane W. Brush will was not merely an insurance policy protecting the residuary interest in the Marion D. Brush estate but also operated as a $25,000 bequest to Tuttle in addition to the interest originally bequeathed to him by Marion D. Brush.
The will of Jane W. Brush bequeathed her residuary estate to a cousin and his wife, who also were bequeathed preresiduary legacies. These residuary legatees challenge the bequest in the Jane W. Brush will of $25,000 which is purportedly a bequest to charity but actually is a gift to Tuttle. This challenge is an attack upon the validity of this will provision as procured by fraud, undue influence or other improper conduct and, subject to proof, would have been a basis for attacking this particular provision of the will in the probate proceeding (Matter of Satterlee, 111 N. Y. S. 2d 280; Matter of Satterlee, 2 N Y 2d 285). The residuary legatees, who are relatives of the testatrix but not distributees of her estate, were not necessary parties to the probate proceeding, although it now appears that they might well have been proper parties, and, since these legatees were not cited in that proceeding, the decree admitting the will to probate is not res judicata upon any issue which the residuary legatees might attempt to raise regarding the validity of a particular testamentary provision. Today the will stands as an instrument valid in all its parts and, until the instrument has been challenged successfully, it must be regarded as the testatrix’ will in this accounting proceeding. The issue is not one of construction of testamentary language, as now suggested by the residuary legatees, but is one of essential validity and this issue is not properly raised upon an accounting. If the residuary legatees have a remedy it is in a proceeding to vacate the probate decree for the purpose of having a particular provision of the propounded instrument declared invalid (Matter of Satterlee, 2 N Y 2d 285, supra).
Other objections to the account in the Marion D. Brush estate allege that Jane W. Brush, or her estate, did not receive the income to which she was entitled as trust beneficiary and the *280 account fails to provide for the payment of commissions to Jane W. Brush as executrix. The response of the accounting executor is that he is not accountable to the residuary legatees for any amounts payable to Jane W. Brush from the estate of Marion D. Brush. The executor relies upon a provision of the Jane W. Brush will reading: “ I release and discharge the Executors of the said Marion D. Brush, their executors, administrators, successors and assigns, from any and all liability to account to me, or to my executors, administrators or any one claiming under or through me, with respect to any rights or benefits acquired by me under the provisions of her Will, which I may not have fully received at the time this Will becomes effective.”
The executor asserts that the quoted text constituted a gift to him of any property payable to Jane W. Brush from her sister-in-law’s estate. The court does not interpret this text either as creating a gift to the surviving executor of the Marion D. Brush estate or as the grant of a privilege to him to appropriate property due to Jane W. Brush. The executor recognizes that section 125 of the Decedent Estate Law declares invalid any provision of the character employed in this will but he argues that this statute deals only with an attempt by a testator to release a fiduciary appointed by the testator and that the statute can have no application to the exoneration of a fiduciary appointed by another testator. However the language of section 125 may be viewed, it is expressive of a public policy which was neither conceived in that statute nor restricted in its application by that act of the 1936 Legislature. Potter v. McAlpine (3 Dem. 108), decided in 1885, held that a provision dispensing with an inventory was invalid. The court said (p. 128): “ If a testator can dispense with the making of an inventory by will, many of the safeguards thus thrown around the estate which comes to the hands of the executor would be thrown down, and fraud and misrepresentation of the trust property would be rendered much easier and less liable to detection than at present. It is against public policy to permit such interference with the forms of procedure established by law, or to remove the barriers designed to protect estates from misappropriation. The safety, preservation and honest distribution of decedent’s estate require that provisions like the one in question should be declared invalid and of no effect.” In Matter of Curley (151 Misc. 664, 675, mod. on other grounds 245 App. Div. 255, affd. 269 N. Y. 548), decided in 1934, it was held that the attempted exoneration of a fiduciary from neglect or misconduct was “ a waste of good white paper.” The prohibition in section 125 pertained to wills but the appliea *281 lion of public policy there illustrated is not so limited (Matter of Burden, 5 Misc 2d 558; Matter of Uran v. Uran, 24 Misc 2d 1069,1071; 2 Scott, Trusts [2d ed.], § 172).
The commission note which is appended to section 125 states that its purpose was to curb the tendency of testamentary draftsmen to acquire unlimited powers with a minimum of obligation. A far greater danger to an estate exists when a draftsman is in a position to convert a provision for exoneration into an effective gift of testamentary assets. It is obvious that this legislation was recommended because of the fact that death would prevent a testator from claiming fraud or breach of trust and too often, without an awareness as to the consequences of his language, a testator deprived his beneficiaries of the gifts intended for them. The fact that death silences the testator distinguishes this situation from that existing in certain inter vivos trusts (cf. Matter of Central Hanover Bank & Trust Co. v. Momand, 176 Misc. 183, affd. 288 N. Y. 608). Section 125 does not expressly limit this application to an appointee of the testator and there appears to be no logical basis for so limiting the public policy expressed in that statute. The rules of conduct applicable to a fiduciary require that he maintain proper standards and be accountable for his conduct (Meinhard v. Salmon, 249 N. Y. 458, 464). It is held that the will of Jane W. Brush does not exempt the executor of the estate of Marion D. Brush from accountability.
The objections to the account of Marion D. Brush are sustained to the extent that the account will be amended to report all trust income payable to Jane W. Brush and her estate will be allowed compensation equivalent to a receiving commission upon assets received by her as executrix and a commission on assets paid out by her as executrix (Matter of Barker, 230 N. Y. 364; Matter of Bushe, 227 N. Y. 85; Matter of Battell, 261 App. Div. 120, affd. 286 N. Y. 97; Matter of Pratt, 38 Misc 2d 990).
Objections 2, 3, 4 and 6 to the account in the Jane W. Brush estate are sustained. Irrespective of the validity of any trust provision the delay of the executor in procuring probate, the damage to the estate resulting from his administration and his refusal to account until faced with imprisonment require the denial of commissions (Stevens v. Melcher, 152 N. Y. 551, 583; (Matter of Rees, 277 App. Div. 839, affd. on this point 302 N. Y. 647; Matter of Bloomingdale, 172 Misc. 218; Matter of Welling, 26 Misc 2d 182).
The personal claim of the executor is allowed to the extent of $200 only. His legal services to the estate are of doubtful value and do not exceed in value the sum of $500 which is allowed *282 to him. The fee of the attorneys appearing for the executor in this proceeding is fixed at $500.
Intermediate decrees directing the amendment of the accounts in accordance with this decision may be submitted on notice. The objectants will be granted a reasonable opportunity to petition to reopen the probate proceeding. If such a proceeding shall not be instituted either within 60 days from the making of an intermediate decree in this proceeding or within 60 days from the disposition of any appeal from such decree, a final decree on accounting may be submitted on notice in each estate.