## WILL OF DALRYMPLE.

*December 14, 1920—March 8, 1921.*

*Wills: Construction: Distribution per capita or within classes: Time of distribution: Discretion of trustees: Vesting of estate: Right-to accumulations after interest vests.*

1. Under a clause in testator's will whereby he directed that the balance of his estate be distributed in equal shares "to the then living children or lineal descendants by right of representation of my six brothers," naming them, it was testator's intention to distribute his residuary estate per capita among the then living children of the named brothers, the lineal descendants of any deceased child to take the parent's share by right of representation.

2. Where the will provided for distribution of testator's estate at the expiration of ten years after his decease, or at such time or times after said ten years, but prior to the expiration of twenty years, from his decease as his executors and trustees or their successors should deem expedient or advisable, the testator gave to the executors and trustees a discretion as to the distribution of his estate within the period limited, with the right to make partial distribution thereof as circumstances might warrant.

3. The will having invested testator's executors and trustees with discretion as to the time when they should distribute the estate, the remainder of the estate will vest at the expiration of the twenty-year period wherein distribution is discretionary with the executors, or at such prior time or times as the executors and trustees may, in their discretion, fix for its distribution.

4. The fund distributed to testator's beneficiaries being part of his residuary estate, and the right thereto in the beneficiaries having vested with the filing of the petition for distribution by the executors, the beneficiaries or legatees are entitled to the accumulations of the fund in the interim.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Construction of will. William F. Dalrymple, bachelor, died July 21, 1901, at the age of seventy-six years. The testator had seven brothers and one sister, David, Mark, Reuben, Clark, Oliver, Noah, Sheldon N., and Mary Ann D. Acocks. David and Sheldon N. and Mary Ann died prior to June 18, 1898, the day on which the testator executed his will. Noah and Mary Ann died without leaving any children. All of the testator's brothers were farmers, and, with the exception of Oliver and Sheldon, lived and died in Pennsylvania. The testator was the owner of the celebrated Dalrymple ranch in Dakota, considerable property situated in Bayfield county, Wisconsin, and some property in the state of Pennsylvania. He usually passed his summers in Wisconsin and his winters in New York or Pennsylvania. In his will the testator gave to each of his five surviving brothers $5,000. He then made specific bequests to his nephews, nieces, and a grand-niece, as follows:

"Silas A. Dalrymple, five thousand ($5,000) dollars (the said Silas being the son of Mark Dalrymple); William F. Dalrymple, son of Oliver Dalrymple, five thousand dollars ($5,000); John S. Dalrymple, son of Oliver Dalrymple, five thousand dollars ($5,000); Oliver C. Dalrymple, son of Clark Dalrymple, forty-five hundred dollars ($4,500); John C. Dalrymple, son of Clark Dalrymple, forty-five hundred dollars ($4,500); Oliver H. Dalrymple, son of Sheldon N. Dalrymple, three thousand dollars ($3,000); Mrs. Emma Dalrymple, daughter of Sheldon N. Dalrymple, three thousand dollars ($3,000); David N. Dalrymple, son of Sheldon N. Dalrymple, three thousand dollars ($3,000); Charles C. Dalrymple, son of Sheldon N. Dalrymple, three thousand dollars ($3,000); Mrs. Mariette Dalrymple Harper, daugh-

ter of Mark Dalrymple, two thousand dollars ($2,000);
Mrs. Mattie Dalrymple Walton, daughter of Mark Dalrymple, two thousand dollars ($2,000); Mrs. Kate Dalrymple
Nichols, daughter of David Dalrymple, five hundred dollars
($500); Mrs. Richard Dalrymple Woodside, daughter of
David Dalrymple, two thousand dollars ($2,000); Mrs.
Minnie Bell Dalrymple Foss, daughter of Sheldon C. Dalrymple, deceased, five hundred dollars ($500); Mrs. Elizabeth Dalrymple Eames, daughter of Mark Dalrymple, five
hundred dollars ($500); Mrs. Alice Dalrymple Dorn,
daughter of Mark Dalrymple, five hundred dollars ($500);
Mrs. Ada Dalrymple Smith, daughter of Mark Dalrymple,
five hundred dollars ($500); Mrs. Viola Dalrymple Fry,
daughter of Mark Dalrymple, five hundred dollars ($500);
William C. Dalrymple, son of Mark Dalrymple, five hundred dollars ($500); Grant O. Dalrymple, son of Mark Dalrymple, five hundred dollars ($500); Alton R. Dalrymple,
son of Reuben Dalrymple, five thousand dollars ($5,000);
Clifton G. Dalrymple, son of Reuben Dalrymple, five hundred dollars ($500); Clark C. Dalrymple, son of Reuben
Dalrymple, five hundred dollars ($500); and to Mrs. Loranda Dalrymple Brooks, daughter of Clark Dalrymple, five
hundred dollars ($500); the payment of each and every of
the above mentioned sum in this item to be made by my said
executors and trustees or their successors in the trust at
such time or times after the expiration of ten (10) years
from the date of my death as they shall deem advisable."

In addition he gave to his nephew, Frank H. Dalrymple,
a farm in Pennsylvania. He then created a trust "for and
during the term of ten (10) years from the date of my
decease and for such longer time not exceeding twenty (20)
years from my decease as they [executors and trustees]
shall deem necessary or advisable for the purpose of maintaining, operating, improving, and developing the properties, rights, and corporation" in Bayfield county, and then
gave certain directions as to the management of the trust.
The will then provided:

"At the expiration of ten (10) years after my decease or
at such other time or times after said ten (10) years but
prior to the expiration of twenty (20) years from my decease as my said executors and trustees or their successors

in the trust shall deem expedient or advisable and for the best interest of my estate, I direct that all the said balance of my estate, together with all proceeds of the sale thereof and all interest, income, accumulations thereof then remaining in their hands except the above mentioned specific devises and bequests, be by them paid over, delivered, and distributed as follows, to wit: in equal shares to the then living children or lineal descendants by right of representation of my six brothers, to wit: David Dalrymple, Mark Dalrymple, Reuben Dalrymple, Clark Dalrymple, Oliver Dalrymple, and Sheldon N. Dalrymple."

The will was admitted to probate, the property was managed and controlled by the executors and trustees, the specific legacies were paid, and on September 20, 1917, the executors and trustees had on hand assets of approximately $200,000 in value. One hundred thousand dollars was represented by a balance due on a land contract for the sale of the Bayfield property. On September 20, 1917, the executors and trustees filed a petition in the county court of Milwaukee county asking for the distribution of the sum of $80,000 then in their hands. The petition presented four questions for the consideration of the county court: First, Did the language be "delivered and distributed as follows, to wit: in equal shares to the then living children or lineal descendants by right of representation of my six brothers, to wit: David Dalrymple, Mark Dalrymple, Reuben Dalrymple, Clark Dalrymple, Oliver Dalrymple, and Sheldon N. Dalrymple," require the division of the estate, or that part of it ready for distribution, into six parts and distribution among the then living children of the brothers named by right of representation, or were the executors and trustees required to divide the estate, or that part ready for distribution, into twenty-eight equal parts, each of the then living children taking one of such parts, the lineal descendants of any deceased child of a brother to take its parent's share by right of representation? Second, Did the will permit of successive distributions, or, under the will, could there be but one distribution? Third, When did the estate vest?

Fourth, Should the legatees receive interest upon their respective shares from the time of the distribution proposed by the executors and trustees?

The county court was of the opinion that the estate should be divided into six equal parts, each of which parts should go to the then living children of the brothers named by right of representation; second, that the executors and trustees were authorized to make distribution from time to time as funds were available; third, that the estate did not vest until actual distribution thereof by the executors and trustees; fourth, that the legatees should take their respective shares in the $80,000 proposed to be distributed without interest. On appeal to the circuit court, that court, by its decree, affirmed the decree of the county court, made formal findings of fact and conclusions of law, and from the judgment entered thereon the appeal to this court is taken.

Briefs were filed by *Louis Quarles* of Milwaukee, guardian *ad litem* for *Helen G. Foss, Richard D. Foss,* and *Ella N. Alexander;* by *Carl F. Geilfuss* of Milwaukee, guardian *ad litem* for *Florence D. Ferguson;* by *Miller, Mack & Fairchild* of Milwaukee, attorneys for the executors and trustees; by *Benjamin Poss* of Milwaukee, guardian *ad litem* for *David Watson Dalrymple;* by *J. W. McMillan* of Milwaukee, attorney for *Grant O. Dalrymple* and *Ernest A. Tullis;* and by *Bottum, Bottum, Hudnall & Lecher* of Milwaukee, attorneys for *William Dalrymple;* and the cause was argued orally by *Mr. Edwin S. Mack, Mr. Quarles, Mr. McMillan,* and *Mr. Geo. B. Hudnall.*

The following opinion was filed January 11, 1921:

ROSENBERRY, J. The principal question in the case is the construction of the language found in paragraph 8 of the will: "in equal shares to the then living children or lineal descendants by right of representation of my six brothers, to wit: David Dalrymple, Mark Dalrymple, Reuben Dalrymple, Clark Dalrymple, Oliver Dalrymple, and

Will of Dalrymple, 173 Wis. 464.

Sheldon N. Dalrymple." It is the contention of the executors and trustees and a considerable number of the legatees that if the words in this clause are considered in the order of their sequence and natural meaning the residue is to be divided into twenty-eight equal parts; that any other construction results in words being superfluous and in words being given a double meaning; that the construction contended for follows the rule that an heir at law is to be favored in construing a will. It is the contention of respondents that if the language be construed in the light of the surrounding facts and circumstances, it appears that it was the intention of the testator that equality should begin with his brothers rather than with his nephews and nieces; that the reason for passing the living brothers was that they were then of advanced age; that if the language be construed as contended by the executors and trustees, the words "lineal descendants" could not apply because there could be no lineal descendants of "the then living children," and that the words "in equal shares" mean that the respective classes should take in equal shares, and not that each of the nephews and nieces should take in equal shares. Reference is made by both parties to sec. 2275, Stats.:-

"Inheritance, or succession by right of representation, takes place when the descendants of any deceased heir take the same share or right in the estate of another person that their parent would have taken if living; posthumous children are considered as living at the death of their parents."

A considerable number of cases have been cited to our attention. We have before us the opinion of the trial court, which has received our careful consideration. The problem presented is one difficult of solution and no conclusion can be reached with such demonstrable certainty as to eliminate all doubts. It is conceded on all sides that the intention of the testator must govern. We are aided very little by the evidence as

to the surrounding facts and circumstances. The testator was a man of large wealth, of unusual business ability and sagacity, and his will was prepared by a lawyer long eminent in the practice of his profession in this state. If we consider the relative circumstances of the various families, we find that by the specific legacies the testator gave to the children of Mark, ten in number, an aggregate sum of $12,000; to the children of Reuben, three in number, the aggregate sum of $6,000; to the children of Clark, three in number, $9,500; to the children of Oliver, two in number, $10,000; to the children of Sheldon, five in number, $12,500; to the children of David, five in number, $2,500. While this summary is of little help, it does indicate that he did not intend to treat his nieces and nephews equally as between families. If the summary is of any value, it would seem to indicate that having provided generously for the children of Oliver, for instance, he would not, without some strong reason, give each of them five times as much as each of the children of Mark would receive if the will be construed as contended for by respondents. But we do not regard this circumstance as controlling. Our conclusion is based rather upon the language of the will itself. The language in any view is more or less elliptical. We are of the opinion that it was the intention of the testator to distribute the residuary estate in equal shares among the then living children of the brothers named, the lineal descendants of any deceased child to take the parent's share by right of representation; that it was the intention of the testator that if any of his nieces and nephews should die before the distribution of his estate, leaving children, such surviving children should take the share of the deceased parent. The testator's brother Oliver was born August 21, 1830, and was the youngest of the surviving brothers who had children. At the time of the making of the will Oliver was sixty-eight years of age, Clark seventy-one, Reuben seventy, and the testator seventy-three. There was

every prospect that some of his brothers who had children would survive the testator. While, of course, there are exceptions, the words "by right of representation" are usually used in connection with the right of legatees to take through a deceased ancestor. There being every prospect that there might be some of his brothers surviving and some not surviving, there being one such case at the time of the making of the will, the language used would not be apt to express the intent of the testator if he intended that his nephews and nieces should take by right of representation through the brothers, as some of the brothers would, in all probability, survive the testator. Taking the words of the testator in their natural sequence, giving the language used its ordinary meaning, we think it was the intention of the testator that his estate should be divided per capita among the then living children of his deceased brothers, the lineal descendants of any deceased child to take its parent's share by right of representation. There is nothing in the surrounding facts and circumstances sufficient to require a different construction. While the phrase "lineal descendants" might have been used so as to refer more clearly to the descendants of a deceased child, we think it much clearer that the phrase was intended to refer to a deceased child rather than to a deceased brother.

Second and Third, the will provided: "At the expiration of ten (10) years after my decease or at such other time or times after said ten (10) years but prior to the expiration of twenty (20) years from my decease as my said executors and trustees or their successors in the trust shall deem expedient or advisable and for the best interest of my estate, I direct," then follow words for distribution of his estate. We are of the opinion that by the use of the words "time or times" the testator intended to and did give to the executors and trustees a discretion as to the distribution of his estate within the period limited, with the right to make partial distribution thereof as the circumstances might

warrant. We are of the opinion, therefore, that as to the $80,000 the right thereto became vested upon the filing of the petition of the executors and trustees on September 20, 1917. As to that sum the administration was complete. Their discretion upon the filing of the petition had been exercised. It was thenceforth a matter for the court.

Margaret Foss Tullis, a daughter of Minnie Belle Foss, one of the legatees, died November 19, 1917, intestate, leaving no issue, and leaving her surviving her husband, *Ernest Tullis,* and her sister, *Helen G. Foss,* and her brother, *Richard D. Foss,* and no other heirs at law or next of kin. That part of the estate ready for distribution having vested as of the 20th day of September, 1917, and Margaret Foss Tullis leaving no issue, under the law of this state her right in the estate of the testator passed to her husband, *Ernest Tullis,* upon her death.

In this connection, we may say that in our opinion the remainder of the estate will vest at the expiration of the twenty-year period or at such prior time or times as the executors and trustees may, in their discretion, fix for the distribution thereof.

Fourth. The fund being distributed being a part of the residuary estate and the right thereto having vested with the filing of the petition September 20, 1917, the legatees are entitled to the accumulations of the fund in the interim. The ordinary rule as to specific legacies bearing interest does not apply.

*By the Court.*—Judgment reversed, and cause remanded with directions to the circuit court to enter judgment in accordance with this opinion.

On March 8, 1921, a motion for a rehearing was denied, without costs, and the mandate modified to read as follows:

*By the Court.*—Judgment reversed, with directions to the circuit court to enter judgment as indicated in the opinion of this court, each appellant to tax disbursements, including

printing, the appellants *William Dalrymple* and *Florence D. Ferguson* to tax in addition clerk's fees; and it is ordered that all disbursements so taxed shall be paid out of the estate of William F. Dalrymple, deceased.