ANDERSEN, Appellant, v. ANDERSEN and another,
Respondents.

*October 6—November 3, 1959.*

For the appellant there was a brief and oral argument by *Frederick F. Hillyer* of Madison.

For the respondents there was a brief by *Schlotthauer & Jenswold* of Madison, and oral argument by *John F. Jenswold*.

FAIRCHILD, J. Appellant plaintiff contends (1) that Andersen's negligence as to management and control, found by the jury, was causal as a matter of law; (2) that a traffic officer was erroneously permitted to state certain opinions; and (3) that evidence on an issue of non-co-operation was erroneously admitted and was prejudicial. For the reasons which follow, we affirm the judgment.

■ *Causation.* Plaintiff argues that the affirmative finding with respect to Andersen's negligence and the negative finding with respect to causation are inconsistent. On motions after verdict, the trial court considered this contention, and after summarizing the evidence, analyzed the matter as follows:

"From all of this evidence the jury could very well have drawn the inference that Andersen saw Morgan only after he came over the crest in his left-hand lane with the right-hand lane free, and Walgreen on the shoulder, and that Andersen was negligent in not sooner applying his brakes or turning to the right, but that with the Morgan car coming down its left-hand lane at such speed that it slid sideways into the Andersen car, that the accident would have happened even though Andersen had not been negligent."

The analysis made by the trial court is a reasonable interpretation of the evidence, and the jury may well have reached its findings by the same reasoning. A finding that a driver failed to apply his brakes or turn his car as soon as he should have is not necessarily inconsistent with a finding that his failure did not cause the collision. *Weber v. Walters* (1954), 268 Wis. 251, 67 N. W. (2d) 395.

■ *Opinions of traffic officer.* A traffic officer testified that he had been employed by the Dane county highway police for twenty-eight years. His duties have consisted of traffic-law enforcement, accident investigation, court work, preparing complaints and warrants, and studying accident and police reports. He has investigated 1,000 accidents, but has never taken any academic course in physics. He did not attend the scene of the collision, but studied six photographs of the automobiles taken at the scene, and a drawing made by another officer showing the locations of the automobiles after the collision and the location of certain skid marks. The drawing and other prints of the same photographs had previously been identified and admitted in evidence. Over objection, the officer was permitted to testify that in his opinion, to a reasonable certainty, at the time of the collision, the Morgan automobile was sliding sideways in the south lane with its front facing to the north lane, and the Andersen automobile was facing southeast with its front end out on the shoulder not parallel with the edge of the concrete but at an angle; that based upon the damage to the automobiles,

the Morgan automobile was going considerably faster than the Andersen automobile.

Just before the officer testified, the court instructed the jury as follows:

"I would like at this time to state to you the rules of law under which this witness will be questioned. The ordinary rule is that witnesses can testify to nothing except facts which are actually personally known to them. There is an exception to that rule which is allowed under the law and that is that if a person has a special knowledge or a special experience, body of experience, which would better enable that person to form an opinion than the jury or the court would be able to formulate, then that person is permitted to express such an opinion. The jury isn't bound by that opinion. The opinion is in essence bordering upon the actual function of the jury itself, namely to form conclusions or opinions. But such opinion evidence is permitted by the court purely for the purpose that if such opinion might aid the jury it is received as such, if the jury wishes to use it as an aid."

A similar statement was included in the court's final instructions.

"Whether in a particular case the opinion of a witness should be received is a matter which rests very largely within the discretion of the trial court. *Lyon v. Grand Rapids* (1904), 121 Wis. 609, 619, 99 N. W. 311. In many courts it is held that the qualification of an expert, that is, whether by reason of special skill or knowledge he can be of assistance to the jury, is a matter wholly for the trial court. 1 Wigmore, Evidence (2d ed.), p. 963, sec. 561." *Anderson v. Eggert* (1940), 234 Wis. 348, 359, 291 N. W. 365. Cited with approval in *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 190, 83 N. W. (2d) 759.

The relative position of the cars at the instant of impact is fairly evident from the damage shown in the photographs. The officer did not explain how he arrived at his opinion as to where the cars were then located with respect to the concrete, and in explaining his opinion with respect to compara-

tive speed the officer merely indicated that he reached his opinion by observing the location and extent of the damage to the two automobiles. While the officer did have a very long experience in the investigation of accidents, we are doubtful whether the experience described in the record was sufficient qualification to give his opinion as to location and relative speed determined solely from an examination of the photographs and the drawing, much, if any, probative value.

It appears, however, that the opinions expressed were consistent with virtually all the other evidence in the record, and that if there was any abuse of discretion in permitting the officer to express these opinions, the plaintiff was not prejudiced thereby.

As has been stated, Andersen testified that when Morgan "made his swing to go back on his side he lost control" and that Andersen then attempted to swerve to his right and put on his brakes. A police officer testified that Andersen said " 'the other car was passing and did not have room to get back in. I went for the shoulder but he skidded into me.' " In a statement given to his insurer, Andersen said:

"I was driving about 40 to 50 miles per hour when Morgan was approaching. . . . Morgan pulled out from behind Walgreen's car and then pulled back. Then he started to pass and I took to the shoulder. I had my left wheel only on the pavement. Walgreen also went into the left ditch. The Morgan car seemed to skid sideways and hit the front of my car with the left side behind the doorpost. I had my brakes on at the time. I would say 75 per cent of my car was on the shoulder on my side of the road. . . . There is nothing more I could do to avoid the accident. I was way out on the shoulder to avoid Morgan. Morgan seemed to lose control of his car."

No witness estimated Morgan's rate of speed. He had told the police officer that he was traveling 55 miles per hour. Walgreen said that his own speed was 35 miles per

hour and testified that Morgan "was gaining on me rapidly. . . . as I got on the shoulder and stopped I just heard a z-z-z-z and that's all."

■ *Evidence on non-co-operation issue.* When the matter went to trial, the amended answer of Andersen's insurer alleged as its separate defense that Andersen had failed to co-operate in defense as required by the policy. This claim of non-co-operation was based upon two propositions: (1) That Andersen, after giving the statement to his insurer previously quoted, had changed his version by stating that Morgan had pulled into Andersen's lane on several occasions and that Andersen did nothing about it at that time; and (2) that Andersen had retained for his wife, or encouraged his wife to retain, to represent her in this action, the same attorney who had previously represented Andersen in obtaining a substantial settlement for Andersen with the insurer of the Morgan car. Plaintiff objected to the admission of evidence on the non-co-operation issue on the grounds that this defense had been waived. The circuit court ruled that the evidence could be admitted. As a result, there is in the record evidence of prior statements by Andersen which his insurer could not have put into evidence in a trial confined to the merits except to the extent it might have done so on a substantiated claim that Andersen was a hostile witness. There was also testimony from Mrs. Andersen's first attorney concerning his previous representation of Mr. Andersen and the fact that he had obtained a settlement of Mr. Andersen's claim against Morgan and his insurer.

The jury having found that there was no lack of co-operation, the only significance of the admission of the evidence on the issue, if it was erroneous, would be its possible influence upon the jury's finding upon the issues of liability of Mr. Andersen to Mrs. Andersen. We conclude that plaintiff is not in a position to complain that the evidence was improperly admitted.

In the first place, the record suggests that plaintiff's counsel agreed that the evidence on the issue of non-co-operation be admitted. The question was discussed among court and counsel in the absence of the jury before the trial began, and then in a conference early in the trial the court ruled that evidence on the issue would be received. Discussion off the record followed that ruling, after which counsel for plaintiff said: "I will permit the evidence." Thereafter, all counsel stipulated that a statement prepared by plaintiff's counsel relating to the chronology of the pleadings, which was material to the issue of non-co-operation, be read to the jury.

The court's ruling may well have been proper, in any event. Plaintiff's claim of waiver was based upon the fact that the insurer knew all the facts material to its defense of non-co-operation at about the time the action was started, but failed to raise that defense at that time. The court's ruling was based, at least in part, upon the plaintiff's failure to raise her claim of waiver more promptly. A brief recital of the facts will indicate the situation.

The summons and complaint were served July 6, 1956. On July 16th, counsel for the insurer appeared for it and for Andersen. On August 13th, they served an answer denying negligence and claiming that at the time of the accident, Mrs. Andersen was an employee of Mr. Andersen and that her exclusive remedy was under the Workmen's Compensation Act. This answer did not set forth the defense of non-co-operation. On November 26th, after the industrial commission had decided that Mrs. Andersen was not an employee, counsel served an amended answer denying negligence. This answer did not allege non-co-operation. On January 28, 1957, counsel applied to the circuit court for permission that the insurer withdraw its defense of Mr. Andersen on the grounds of lack of co-operation. After hearing before Circuit Judge BARDWELL, the court denied the

application to withdraw, but granted the insurer the right to serve an amended answer raising "any policy defense it may care to assert" and the right "to raise such issues by separate trial or during the trial of this action on its merits." On March 22d, the insurer served an amended answer pleading non-co-operation. There does not appear to have been any further proceeding with respect to the alleged defense of non-co-operation until the matter came on for trial November 12, 1958. Plaintiff's present counsel was substituted for her original counsel on September 11, 1958. However persuasive plaintiff's claim that the defense of non-co-operation had been waived, plaintiff had evidently failed to make that claim when the matter of non-co-operation was first considered by the court in February, 1957, nor to raise it by any appropriate motion within the twenty months which followed. At the beginning of the trial, plaintiff was in the situation of asking the circuit court to exclude evidence upon the basis of the pleadings and certain matters conceded by counsel. Under the circumstances, the circuit court acted within its discretion in permitting all the evidence on the issue to go before the jury. Whether the evidence demonstrated that there has been waiver is now academic because the jury decided that there was no failure to co-operate.

Finally, if plaintiff wished to avoid the jury's hearing the evidence on the issue of non-co-operation, she could properly have asked for a separate trial on that issue as permitted by sec. 260.11 (2), Stats. For an example of a separate trial of policy defenses, see *Hunt v. Dollar* (1937), 224 Wis. 48, 271 N. W. 405. Plaintiff did not, however, make the request.

It is probable that some degree of confusion existed at the trial by reason of the joint trial of the issues relating to the liability of Andersen and the issue of his alleged lack of co-operation. We have therefore given careful consideration to the record in order to determine whether it appears

probable that justice has miscarried. If it so appeared, we could exercise our discretionary power to order a new trial under sec. 251.09, Stats. Although there was evidence to sustain a finding of causal negligence, the record strongly suggests to us an unforeseen emergency in which Mr. Andersen did not have the opportunity of taking any effective action to avoid the collision. It does not appear that the verdict reflects any miscarriage of justice.

*By the Court.*—Judgment affirmed.