ESTATE OF BRANDENBURG: HILLYER, Appellant, v.
WINGERT and others, Respondents.

*March 7—April 4, 1961.*

For the appellant there was a brief by *Frederick F. Hillyer* of Madison, attorney, and *Edward J. Callahan, Jr.,* of Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Hillyer.*

For the respondent E. L. Wingert, special trustee, and five other respondents there was a brief by *E. L. Wingert, in pro. per.; John W. Reynolds,* attorney general, *Warren H. Resh,* assistant attorney general; *Roberts, Boardman, Suhr, Bjork & Curry; Aberg, Bell, Blake & Metzner;* and *Ela, Christianson, Ela, Esch, Hart & Clark,* all of Madison; and oral argument by *Mr. Wingert, Mr. W. Wade Boardman,* and *Mr. Robert J. Vergeront,* assistant attorney general.

For the following respondents there was a brief by *Warren D. Lucas* of Madison, for Rho of Psi Upsilon, Inc., and by *Brady, Tyrrell & Bruce* of Milwaukee, for Saint John's Home for Aged Women, and oral argument by *Jackson M. Bruce* and *Warren D. Lucas.*

For the respondent Catherine Bassett there was a brief by *Spohn, Ross, Stevens & Pick,* attorneys, and *Russell J. Mit-*

*telstadt* of counsel, all of Madison, and oral argument by *Frank A. Ross.*

DIETERICH, J. The testimony and record reveal that Arabelle S. Brandenburg and her son, Frederick S. Brandenburg, made several wills. Arabelle S. Brandenburg made a will on December 14, 1942, a codicil on March 14, 1946, a will on March 29, 1946, and a will on May 2, 1946. Frederick S. Brandenburg made a will on September 1, 1943, one on May 3, 1946, a will on May 9, 1947, and a will on February 14, 1958.

The will under date of December 14, 1942, and the codicil of March 14, 1946, and the will of March 29, 1946, were revoked by Arabelle S. Brandenburg and destroyed. The will of May 2, 1946, was her only will.

Frederick S. Brandenburg destroyed all of his wills with the exception of his will of February 14, 1958. The will of September 1, 1943, contained a trust provision and a number of charities. On May 3, 1946, he executed another will and omitted some of the charities named in the 1943 will. On May 9, 1947, he made another will in which the charities were almost identical with that of the 1946 will. On February 14, 1958, he made another will which is the will now pending in probate in which he omitted all charities.

The will of Arabelle S. Brandenburg dated May 2, 1946, was admitted to probate in Dane county court. Under its terms a trust was created with the income therefrom payable to her daughter, Mrs. Catherine B. Bassett, and her son, Frederick S. Brandenburg.

The trust was in effect on January 4, 1959, the day on which Frederick died. Catherine, however, survived her mother and brother, and is now living and is receiving the entire income of the trust.

Frederick S. Brandenburg's will of February 14, 1958, was admitted to probate, and proceedings are now pending. He is survived by a widow, Elsie, and two children.

On March 18, 1957, Frederick adopted a daughter, Margrit R. Huhne. Under the terms of his will a trust was created for the benefit of his widow, Elsie Brandenburg, and upon her death the corpus is to be paid to his adopted daughter, Margrit R. Huhne. There were no provisions for charities.

By par. Fifth of the testatrix's will, all her stock in the Democrat Printing Company was placed in trust. The provisions of par. Fifth of Arabelle's will are as follows:

"Fifth. All of my stock in the Democrat Printing Company I bequeath unto my trustee hereinafter named, in trust nevertheless, for the following purposes, subject to the following provisions and conditions:

"1. To pay the net income in equal shares to my daughter, Catherine B. Bassett, and to my son, Frederick S. Brandenburg.

"2. My trustee shall have authority in his discretion to consent to and participate in plans of debt adjustment, reorganization, merger, or consolidation in respect of the Democrat Printing Company, and in connection with any such proceedings to pay any assessments and expenses which he may deem expedient or which may be required for the protection of the trust estate.

"3. For the duration of this trust my trustee is not empowered to sell any of the stock comprising the corpus of this trust estate, unless such sales shall be necessary to fulfil a certain stock-purchase and option agreement entered into by members of my family and myself with Walter A. Frautschi of the village of Maple Bluff, Dane county, Wisconsin, on October 14, 1939.

"4. Should my daughter, Catherine B. Bassett, predecease my son, Frederick S. Brandenburg, this trust shall thereupon terminate and the entire corpus thereof be distributed to my said son, together with any accumulated income therefrom.

"5. Should my son predecease my daughter, the entire income from the corpus shall be paid to her during her life. On her death [Mrs. Bassett's] the stock shall be offered for sale and one half the proceeds thereof shall be paid over to her estate and the other one half *to my son's trust estate, which is willed to charities, including those of my choosing;* provided further, that if my son predecease my daughter, the latter may, at any time elect to direct the then trustee to sell the Democrat Printing Company stock constituting the corpus of this trust, and such direction is mandatory on the trustee. The proceeds of such sale, as in the case above, shall be paid over in equal shares to my daughter and to the trust estate of my son. [Emphasis supplied.]

"6. The underlying purpose of creating this trust is to keep intact, during the life of my son, my holdings in the Democrat Printing Company, which, when added to those of my son, constitute a controlling interest, and at the same time to fulfil the stock-purchase agreement with Walter A. Frautschi earlier referred to."

It is contended by the appellant that the provision of the will discloses an intention on the part of the testatrix to make a gift to whatever trust estate might be established by the last will of her son and not to the charities, and thus that the son was in effect given a power of appointment of the mother's trust estate. We do not think the language in question is susceptible of that interpretation. The contention wholly disregards the words, *"which is willed to charities, including those of my choosing."*

A will is to be construed if possible so as to give effect to every part thereof and a construction is to be preferred which will sustain the provisions of the will rather than to defeat them. It is not the proper function of this court to depart from the grammatical meaning of the language, to qualify it, and then to wander from its "certainty" to "the uncertainties of construction," or to search for technical rules to defeat it. Charitable trusts are favored in the law. We believe it is the function of this court to seek for legal means to carry

out a manifest intent of the testatrix that her property ultimately go to charities then in contemplation rather than to devote much ingenuity to the search for a way to defeat that intent. See the following authorities: *Will of Boeck* (1915), 160 Wis. 577, 152 N. W. 155; *Estate of Mead* (1938), 227 Wis. 311, 321, 277 N. W. 694, 279 N. W. 18; and *Estate of Buser* (1959), 8 Wis. (2d) 40, 44, 98 N. W. (2d) 425.

The context and language used unmistakably show that it was not intended as a power of appointment because the donee of the power could execute a later will and make no provision for any of the charities named in the will of May 3, 1946. In fact, Mr. Brandenburg's last will of February 14, 1958, which was admitted to probate makes no provision for any of those charities.

It would be straining the provisions of the trust to hold it was intended to be a gift to the son's estate. The much-more-natural interpretation of the language used in the light of the evidence and reasonable inference to be drawn therefrom, is that it was intended to be a gift to the charities named. This interpretation satisfies the words by the testatrix relied on—"including those of my choosing"—without changing the meaning of, or contradicting any express language of the testatrix, or making it mean what it plainly does not mean. Applying liberal rules of construction, it is the duty of the court to prevent a lapse of the trust created in favor of the designated beneficiaries.

When Mrs. Brandenburg used the words, "the other one half to my son's trust estate, which is willed to charities, including those of my choosing," it is obvious that she intended certain particular charities to take the property eventually. It remained only for the court to determine the identity of the will referred to. To this end recourse was had to extrinsic evidence of the facts and circumstances in the light of which testatrix framed her will.

By way of inference from practically undisputed testimony of the attorney and scrivener and evidence, it is reasonably clear that mother and son planned and drafted together the will of May 2, 1946, of Arabelle S. Brandenburg and the will of May 3, 1946, of Frederick S. Brandenburg, and agreed upon the provisions in both wills and the mandate was clear that the trust provisions of Frederick's will were to tie in with that of his mother's will.

The contention that the 1943 will was incorporated because it was then in existence has no merit.

Two phrases of the language used in testatrix's will must be considered together: (1) "Which is willed to charities," and (2) "including those of my choosing." The inferences to be deduced from the two phrases considered in the light of the surrounding circumstances were for the trial court. The trial court reasonably drew the inference from the facts that testatrix did not intend, by her will executed May 2, 1946, to give Frederick a power of appointment over the property of the trust for which she was providing. She intended half of the trust estate to go to the specific trust and ultimately to the specific charities described in the draft of Frederick's will of May 3, 1946, which was in existence on May 2, 1946, and contained in the will executed by Frederick on May 3, 1946.

In *Will of Ehlers* (1913), 155 Wis. 46, 48, 143 N. W. 1050, it is stated:

"The court has very great power which may be exercised to prevent failure of a testator's purpose, all in harmony with the rule that the legal intention of the testator is the one expressed by his language, though it may not be exactly the real intention he had in mind—that his purpose can be given vitality only so far as it can be read reasonably out of the will—but to the end that the testamentary idea may be so read the language should be examined in the light of the

situation of the testator at the time he used it and all environing circumstances."

Where the language used in a will is reasonably susceptible of two different constructions, one of which will defeat and the other sustain the provisions, the doubt is to be resolved in favor of the construction which will give effect to the will, rather than the one which will defeat it. *Estate of Donges* (1899), 103 Wis. 497, 79 N. W. 786.

An abridged statement of facts found by the trial court, and set forth at length in the decision and findings of the trial court and supported by the undisputed testimony of the attorney and scrivener of Arabelle's and Frederick's wills, conclusively discloses that a draft of the new will of Frederick S. Brandenburg was in existence at the date and hour when Arabelle S. Brandenburg executed her will of May 2, 1946; that such draft was the same in all material respects as the will actually executed by Frederick on May 3, 1946, naming the identical charitable beneficiaries; and that Arabelle S. Brandenburg understood and expected that Frederick would immediately execute such a will naming those identical charities agreed upon.

The principles of law applicable to the decision of the case before us are perfectly settled by the decisions of this court. Inferences to be drawn from the evidence are functions of the trial court. The drawing of reasonable inferences from the evidence presented constitutes part of the function of fact finding which is vested in the court or in the jury. The credibility of witnesses and the weight to be given to testimony are within the province of the trier of facts. Where testimony is not in dispute as in the instant case, but permits the drawing of different inferences therefrom, the drawing of such permissible inferences is an act of fact finding. *Estate of Vickman* (1959), 6 Wis. (2d) 48, 93 N. W. (2d)

873, and *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 595, 95 N. W. (2d) 249.

Modern decisions indicate a growing appreciation of the judicial duty to uphold testamentary dispositions of property, made through the medium of trusts, instead of searching for reasons for avoiding them, or dealing with them with any degree of disfavor. In the instant case there was a clear and fully expressed purpose to create a trust and the beneficiaries to be benefited are unmistakable. The facts are clear and undisputed that Arabelle Brandenburg understood that Frederick would execute his will naming those identical charities.

For the purpose of Arabelle Brandenburg's will, the named charitable beneficiaries in Frederick Brandenburg's will of May 3, 1946, were to be regarded as verities. Plainly, it was the testatrix's purpose to foreclose any change of beneficiaries and the names referred to in the draft of Frederick's will were conclusive and were admissible. The great majority of states, including Wisconsin, have accepted the doctrine of incorporation by reference. *Skinner v. American Bible Society* (1896), 92 Wis. 209, 65 N. W. 1037, and *Estate of Wells* (1924), 184 Wis. 242, 199 N. W. 52.

The fact that a document was not in existence in final form does not prevent it from being incorporated into a will by reference. It, therefore, follows that in 2 Page, Wills (Bowe-Parker rev.), p. 105, sec. 19.27:

"If a trust document to be incorporated into a will was in existence at the time the will was executed, the fact that it was not signed or that the trust had not been created by the transfer of property to the trustee should not prevent the incorporation of the trust document into the will."

Testatrix's, Arabelle S. Brandenburg, charitable bequests cannot be allowed to fail by reason of Frederick S. Branden-

burg's later departure from the plan arranged between his mother and himself. One half of the property of the trust created in par. Fifth of Arabelle's will is impressed with a constructive trust for the benefit of the residuary charitable beneficiaries named in Frederick S. Brandenburg's will of May 3, 1946. The general rule is that where a person knowing that a testator, in giving him a devise or bequest, intends it to be applied for the benefit of another, and either expressly provides, or by his action at the time implies that he will convey the testator's intention into effect, and the property is left to him in good faith on the part of the testator that such promise will be kept, the promisor will be held as a trustee *ex maleficio*. 66 A. L. R. 157; 155 A. L. R. 107; and *Brook v. Chappell* (1874), 34 Wis. 405. Consequently, no intestacy resulted by the revocation by Frederick of his will of May 3, 1946. The trial court in its judgment correctly construed par. Fifth of Arabelle's will. It, therefore, follows that no interest in the trust estate of Arabelle S. Brandenburg has passed, or will pass on termination of said trust, to the estate of Frederick S. Brandenburg or to the trust estate of Frederick S. Brandenburg.

*By the Court.*—Judgment affirmed.