In re Trust created under agreement dated December 30, 1924, with EDWARD R. BOWLER: MAHON, Appellant, v. SECURITY FIRST NATIONAL BANK, Trustee, and others, Respondents.

*No. 180. Argued October 4, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 573.)

For the appellant there was a brief by *Fulton, Menn & Nehs, Ltd.*, attorneys, and *Robert D. Bauman* of counsel, all of Appleton, and oral argument by *Mr. Bauman.*

For the respondents Peter Clemens and Ann Brenner there was a brief by *Miller, Hayes & Werner, S.C.*, of Sheboygan, and oral argument by *John M. Hayes.*

For the respondent E. H. Clemens, Jr., there was a brief by *Gerald S. Murphy*, attorney, of Evanston, Illinois, and *John M. Hayes* of counsel, of Sheboygan, and oral argument by *Mr. Murphy.*

WILKIE, J. Two issues are raised by this appeal:

1. Did the settlor, Edward R. Bowler, intend that the principal and undistributed income of the trust be distributed to the children of his three daughter-beneficiaries by right of representation—*per stirpes,* or equally —*per capita?*

2. Did the trial court err in not allowing testimony by the professor of English regarding the meaning of certain words used in the trust instument?

1. *Per capita v. per stirpes.* The trial court aptly described the *per capita/per stirpes* controversy as one of the "hoariest" to confront the law. Indeed, Judge STORY'S comments in 1832 concerning the construction of wills are particularly appropriate to this controversy:

" 'The cases almost overwhelm us at every step of our progress; and any attempt even to classify them, much less harmonize them, is full of the most perilous labor.' " [1]

It is often remarked of this area that the cases are hopelessly divided.[2] The root of this division has been explained not as the application of different principles of construction, but rather that quantum of evidence of a contrary intent which is required to overcome the general presumption of *per capita* division in the absence of specified proportions.[3]

In Wisconsin it is clear that the general rules of will construction apply to the *per capita/per stirpes* controversy.[4] Thus, for example, paramount is the testator's intent, "which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testatrix at the time of its execution." [5] This court has also favored interpretations giving effect to all the parts of a will,[6] but also that the

[1] *See, Will of Griffiths* (1920), 172 Wis. 630, 635, 179 N. W. 768.

[2] *Will of Asby* (1939), 232 Wis. 481, 486, 287 N. W. 734.

[3] *See:* Annot. 16 A. L. R. 15, 16; Annot. 31 A. L. R. 799; Annot. 78 A. L. R. 1385; and Annot. 126 A. L. R. 157.

[4] *Will of Asby, supra,* footnote 2, at page 483. Will rules also apply to trusts, *Uihlein v. Uihlein* (1960), 11 Wis. 2d 219, 225, 105 N. W. 2d 351.

[5] *Will of Richter* (1934), 215 Wis. 108, 111, 254 N. W. 103.

[6] *Id.* at page 111.

whole is to be considered in determining the real intent of the testator.[7]

Along with these general will-construction rules, several rules with respect to the *per capita/per stirpes* controversy have been adopted in the few cases dealing with the subject in this jurisdiction. In *Will of Asby* [8] this court noted that a bequest to "A and the children of B" indicates, in the absence of a showing of contrary intention, a *per capita* distributive intent. The court also noted with approval the general rule favoring *per capita* distribution where the wills incorporate the words "equally" or "share and share alike." [9] This rule has been utilized, contrary to the majority of jurisdictions, regardless of unequal degrees of relationship or consanguinity.[10] It has also been held in this state that a gift to a class generally results in an equal-*per capita* distribution.[11]

In *Estate of Porter,*[12] however, these general presumptions were held to necessitate only a " 'very slight circumstance' " to be rebutted or overcome.

Keeping in mind these general rules of construction and special presumptions relating to the *per capita v. per stirpes* controversy, it is necessary in the instant case to seek out the settlor's intention.

It is the essence of appellant's position that the words "by right of representation" used in paragraph 12 by the settlor were intended to modify the entire principal distribution clause, resulting in a *stirpital* division of the trust corpus to his grandchildren. Respondents, however, contend the words "in equal shares" control the

---

[7] *Will of Hill* (1952), 261 Wis. 290, 297, 52 N. W. 2d 867.

[8] *Supra,* footnote 2.

[9] *Id.* at page 487.

[10] *Will of Bray* (1951), 260 Wis. 9, 15, 49 N. W. 2d 716.

[11] *Estate of Phillips* (1940), 236 Wis. 268, 272, 294 N. W. 824, 296 N. W. 608.

[12] (1941), 238 Wis. 181, 185, 298 N. W. 624.

paragraph and require a *per capita* or equal corpus distribution to all of settlor's grandchildren. The pertinent paragraph states:

"12—Upon the decease of donor's three daughters named as beneficiaries of this trust, this trust shall terminate and the trustee shall thereupon pay all of the principal and undistributed income of said trust fund in equal shares to the then living issue of donor's three daughter-beneficiaries in this trust, and/or the then living issue of any deceased issue of donor's three daughter-beneficiaries, by right of representation; . . ." (Emphasis supplied.)

Appellant advances three arguments in support of her *per stirpes* interpretation:

1. The prepositional phrase "by right of representation" which is used as an adverb (according to appellant) refers back to the verb "shall pay" and indicates the settlor's intent was to divide the trust corpus among his grandchildren *per stirpes*.

2. The use of the term "issue" referring to those who would take also points to an intent to have a *per stirpes* distribution.

3. Attorney Bowler was familiar with case law at the time this trust document was drawn in 1924, and the important case of *Will of Dalrymple*,[13] decided three years before, underscored the necessity for a comma to indicate that a modifying clause was intended to modify all preceding clauses.

On her point of grammar, appellant contends that the placement of the comma just before the phrase "by right of representation" is significant because such a comma is unnecessary between a modifier and its antecedent and therefore the location of the comma indicates that the clause was intended to refer to the entire paragraph and not just the immediately preceding clause. Appellant refers to several English grammar texts to support this

---

[13] (1921), 173 Wis. 464, 180 N. W. 829, 181 N. W. 821.

proposition. The "in equal shares" phrase, according to appellant, merely signifies the settlor's intent that equal shares of the trust corpus be distributed to the three classes of beneficiaries and not to individual beneficiaries.

Appellant asserts that her interpretation of the comma's location is identical to this court's interpretation in *Service Investment Co. v. Dorst,*[14] a case involving statutory construction, wherein was held:

> "In construing sub. (1) of sec. 75.62, Stats., the presence of the comma, which is after the antecedent clause, 'to set aside any tax,' and which separates that clause from the clause, 'for any error or defect going to the validity of the assessment and affecting the groundwork of such tax,' is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one. *If the modifying clause had been intended to modify only the last antecedent clause, there would have been no occasion for the comma and it would have been omitted."* (Emphasis supplied.)

But in *Dittner v. Town of Spencer*[15] this court recently construed the quoted language in *Service Investment Co. v. Dorst* and said:

> ". . . Such rule may be appropriate where there are no other clues to the legislature's intent, but the very case property owners cite points out that the application of the rule is dependent upon the reasonableness of the interpretation in terms of the subject matter of the statute and whether the interpretation dictated by these ossified rules of construction reaches a workable result. An interpretation reached by relying upon a rule of grammatical construction cannot stand in the face of a conflict revealed in the subject matter under consideration."

Moreover, in the probate case of *Estate of Porter,*[16] involving questions substantially similar to the key question in the instant case, this court declared:

[14] (1939), 232 Wis. 574, 577, 288 N. W. 169.
[15] (1972), 55 Wis. 2d 707, 711, 201 N. W. 2d 45.
[16] *Supra,* footnote 12.

"... The phrase 'divided in equal shares' used early in paragraph tenth 'divided in equal shares among my cousins' stands in the will far distant from 'the children of ... [the two deceased cousins].' A phrase by familiar grammatical construction is to be construed as relating to its nearest antecedent." [17]

Since there were no words, as in the instant case, indicating any *stirpital* intent and no commas,[18] *Porter* can only stand for the proposition that this court has generally regarded the words in a sentence as an important key to ascertaining a testator's intent. The quoted language in *Porter* reinforces respondents' argument that had the settlor desired a *stirpital* division among his grandchildren he would have located such clause nearer to the clause it was intended to modify.

We conclude that the intent of the settlor, in his placement of the representation clause at the very end of the paragraph, was that a division by representation or *per stirpes* was to occur only in the event that one of the grandchildren died before final distribution was had. Given this contingency, the issue of such grandchild would take via representation the share their ancestor was entitled to.

Appellant's construction of "by right of representation" as applying to the entire paragraph would render redundant the words "in equal shares." That is, a *stirpital* division needs no additional words calling for equality within the *stirpital* class. Settlor's placement of the "in equal shares" clause near the beginning of the directive words indicates his intent that equality or *per capita* distribution should govern. It is also clear in the trust document that the settlor waited to distribute the

---

[17] *Id.* at page 185.

[18] "Tenth. All the rest, residue and remainder of my estate, I direct be divided in equal shares among my cousins, hereinafter named, to wit [13 names] and the children of John Edmond Colton and Mina Tobie who survive me." *Id.*, note 1, at pages 183, 184.

entire corpus until his last daughter died. The reason for this is that he intended a *per capita* division of the corpus and to achieve such a purpose settlor was forced to wait to distribute until all the daughters were dead. Had settlor intended a *per stirpes* distribution he could easily have provided for one as each daughter died. His waiting indicates an intent that the grandchildren share equally in the bounty.

Respondent urges this court to interpret the paragraph as it would be uttered. In other words, it is more logical to assume that the settlor, an attorney, had he desired the representation clause to control, would have placed such clause where it would be unambiguous—prefacing his distributive words rather than tailing them where his intent could easily be confused. That he did not, respondents assert, signifies his lack of intent to have the representation clause control.

Appellant's second argument is that the settlor intended a *stirpital* corpus division among the grandchildren because he used the term "issue" to refer to those who would take. Appellant quotes Bogert to support her argument:

"... Thus a gift in trust for A for his life and upon his death to his issue or descendants usually has been held to require a per stirpital division among A's issue or descendants surviving him. If the remainder is given to children or grandchildren, the courts have more readily found an intention that the members of the described class or group should take per capita." [19]

This rule has been acknowledged in *Will of Bray*,[20] a case involving issues similar to those in the instant case. But in *Bray* this court held that the testator's use of the term "in equal shares" was sufficient to rebut such an inference or presumption.

[19] Bogert, *Trusts and Trustees* (2d ed.), pp. 220, 221, sec. 182.
[20] *Supra*, footnote 10, at page 14.

Then too, the trial court, in the instant case, interpreted the term "issue" to mean "children." Although we held in *Estate of Porter* that "[t]he use of the word 'children' in a bequest to the children of a named person implies, generally speaking, a *per stirpes* distribution," [21] we also stated that where other evidence of intent is present the implication does not operate. The trial court concluded that a contrary intent was demonstrated by the settlor.

Appellant's third and final argument as to the settlor's intent is that Edward R. Bowler was an attorney and, as such, he would have been aware of the recent case of *Will of Dalrymple*,[22] in which this court, according to appellant, underscored the necessity for a comma to indicate that a modifying clause was intended to modify all preceding clauses. In that case this court interpreted the words: "in equal shares to the then living children or lineal descendants by right of representation of my six brothers, to wit: [names the brothers]." Based upon two considerations this court held that the testator intended his estate to be divided *per capita* among the then living children of his deceased brothers. In the event of one of those children dying before distribution, the lineal descendants of such child would take its parent's share by right of representation.

The first of the considerations relied upon by this court was that the words were to be interpreted as appearing in their natural sequence. This being the case, the equality clause referred to the children of the brothers and the representation clause referred to the alternative takers, the lineal descendants of a deceased parent. The second consideration relied upon in *Dalrymple* was the fact that there was every indication that some of the testator's brothers would survive him. Since the "by

---

[21] *Supra,* footnote 12, at page 185.

[22] *Supra,* footnote 13, at page 467.

right of representation" clause usually refers to the right of a person to take through an ancestor, had the testator intended such clause to refer to his brothers' children, some of those children might well have received nothing. This court felt the testator's intent was to equally divide his property among the entire class of nieces and nephews rather than arbitrarily exclude some—those whose parent survived the testator.

Appellant argues that the settlor's usage of the comma before the words "by right of representation" was a direct result of this case, the settlor being a lawyer. Since the *Dalrymple* holding confined the representation clause to the phrase immediately preceding it, appellant argues the settlor's use of the comma was intended to achieve the opposite result. That is, the settlor used the comma to indicate his intent that the "by right of representation" clause apply to both prior phrases rather than only the last one. The result, of course, would then be a *per stirpes* division rather than a *per capita* division among the six grandchildren.

We are satisfied that the settlor would not choose to indicate his intent by the placement of a comma. He might have more adequately spelled out his intent had he intended the representation clause to apply to the entire preceding paragraph. In view of the "in equal shares" clause and the placement of the "by right of representation" clause at the very end of the paragraph, it appears that the settlor intended the corpus to be divided equally among his grandchildren.[23] Further, he

---

[23] *Cf. Estate of Blackbourn* (1951), 260 Wis. 25, 49 N. W. 2d 755, wherein the words "to be divided equally among them share and share alike. All of such nieces and nephews shall take *per stirpes* and not *per capita* and it is my desire that the issue of any deceased niece or nephew shall take their parent's share," were interpreted to be so contradictory as to render the *"per stirpes* and not *per capita"* words nugatory. The testator's intent, according to this court, was to provide equal shares to the nieces and nephews.

intended the representation clause to apply only in the event of a grandchild's death before the distribution.

2. *Expert Testimony.* Appellant asserts that the trial court's denial of the grammarian's expert testimony was error. Appellant argues that the question of what inferences are able to be drawn from stated language is a question of fact and not law. Hence, because the rules of grammar are often highly technical, an expert with special knowledge or experience regarding grammatical construction may be necessary. This, argues appellant, is such a case.

The determination of this issue hinges upon whether or not the words used by settlor are clear and unambiguous with respect to his intent.[24] If the intent is clear no extrinsic evidence is necessary.[25] The general test as to the admissibility of expert testimony is whether the subject matter involves a "special knowledge or skill or experience on subjects, which are not within the realm of ordinary experience of mankind, and which require special learning, study and/or experience." [26] Conversely, if the court or jury is able to draw its own conclusions, expert testimony is not proper.[27]

The sophistications of English grammatical construction may well require an expert to fully comprehend. However, such is not what is under scrutiny in the case before this court. We are not concerned with whether the settlor used good, fair or poor English. What Edward R. Bowler *meant* when he used certain words is not determined by a grammarian's expertise. This is a matter that the finder of fact must resolve.

[24] *Will of Boeck* (1915), 160 Wis. 577, 580, 152 N. W. 155.

[25] *Estate of Gibbs* (1961), 14 Wis. 2d 490, 496, 111 N. W. 2d 413; *Estate of Gehl* (1968), 39 Wis. 2d 206, 210, 159 N. W. 2d 72.

[26] Mallare, *Wisconsin Civil Trial Evidence,* p. 121, ch. 4, sec. 4.4.

[27] *Casson v. Schoenfeld* (1918), 166 Wis. 401, 415, 166 N. W. 23.

With respect to the construction of wills this court held in the case of *Estate of Brandenburg:* [28]

". . . It is not the proper function of this court to depart from the grammatical meaning of the language, to qualify it, and then to wander from its 'certainty' to 'the uncertainties of construction,' *or to search for technical rules to defeat it.*" (Emphasis supplied.)

Since a trial court is given wide discretion in determining whether expert opinion should be received,[29] and this is not a situation wherein expert testimony is required,[30] we are satisfied there was no abuse of that discretion here in excluding the testimony of Dr. Dale.

*By the Court.*—Judgment affirmed.

---

[28] (1961), 13 Wis. 2d 217, 222, 108 N. W. 2d 374.
[29] *Andersen v. Andersen* (1959), 8 Wis. 2d 278, 283, 99 N. W. 2d 190.
[30] Mallare, *supra,* footnote 26, p. 123, ch. 4, sec. 4.43.