L.P. VOIGT, Secretary, Department of Natural Resources
You have requested my opinion concerning the construction of certain spectator facilities in a state forest as well as the Department's authority to lease state forest property to other units of government or to private interests for this purpose. *Page 520 
Specifically your first question asks:
 "1. Does the Department of Natural Resources have the authority as an outdoor recreation function pursuant to Section 28.04, Wisconsin Statutes, or any other authority, to construct parking lots, bleachers, wells and toilet facilities specifically for spectator sports, such as watching a water ski club show from state forest property?"
It is my opinion that the Department of Natural Resources does not have such authority. Section 28.04, Stats., provides:
 "The primary use of forests is silviculture and the growing of recurring forest crops, with scenic values, outdoor recreation, public hunting and stabilization of stream flow as extra benefits. Forests are productive properties which contribute to employment in woods and mills, provide commodities essential to national defense and consumers' needs, and earn returns on the investment. However, full recognition must be given to the principle of multiple use, including designation of special use tracts ranging from natural areas receiving a high degree of protection to recreation sites with appropriate facilities." (Emphasis added.)
This section recognizes the commercial as well as scenic, recreational and environmental values of forest land.
Recreation, however, is considered merely an "extra benefit" subordinate to silviculture. Compared to "natural areas," to be given a "high degree of protection," recreation sites seem to be given a low priority.
It is unclear what the Legislature meant by the phrase "recreation sites with appropriate facilities." One of the aids properly used to clarify the meaning of a doubtful statute is reference to other similar statutes.
 "On the basis of analogy the interpretation of a doubtful statute may be influenced by language of other statutes which are not specifically related, but which apply to similar persons, things, or relations. By referring to other similar legislation, a court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or *Page 521 
several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law. It follows that the usefulness of the rule is greatly enhanced where analogy is made to several statutes or a statute representing a general course of legislation." 2A Sutherland, Statutory Construction, sec. 53.03, p. 346, (4th Edition, Sand 1973).
One of those statutes relating to the same subject matter as sec. 28.04 is sec. 23.30, Stats. Created by ch. 353, sec. 31, Laws of 1969, sec. 23.30 established the Outdoor Recreation Aids Program.
 "The purpose of this section is to promote, encourage, coordinate and implement a comprehensive long-range plan to acquire, maintain and develop for public use those areas of the state best adapted to the development of a comprehensive system of state and local outdoor recreation facilities and services in all fields, including without limitation because of enumeration, parks, forests, camping grounds, fishing and hunting grounds, related historical sites, highway scenic easements and local recreation programs, except spectator sports, and to facilitate and encourage the fullest public use thereof." (Emphasis added.)
In my opinion, this language was meant to exclude spectator sports from those "fields" to be encouraged by state funds. The nature of state activity in outdoor recreation has been participatory. For example, the Legislature has enthusiastically supported the use of parks and forests for activities such as biking, hiking, swimming, boating, fishing, hunting, trapping, shooting, camping, motorcycling, snowmobiling, enjoyment of scenic beauty, and nature study; but it has never expressly supported team sports, commercial endeavors, or similar activities which include mass spectatorship. It would seem that the Legislature has intended to encourage individual appreciation of and participation in the out-of-doors. I could find nothing express or implied either in the language or history of outdoor recreation, conservation, natural resource, or other related legislation that demonstrates Legislative support for spectator facilities in state parks or forests, with the unique exception of the State Fair Park. See secs. 93.24 and 93.25. Furthermore, it is very *Page 522 
likely that the construction of spectator sport facilities in certain areas would be inconsistent with the primary use and natural state of forest lands.
It is arguable, however, that the phrase in sec. 23.30 "except spectator sports," under the doctrine of "the last antecedent," applies only to "local recreation programs" rather than to the phrase "all fields." However, the Wisconsin Supreme Court inService Investment Co. v. Dorst (1939), 232 Wis. 574,288 N.W. 169, said, quoting another case:
 "`The general rule that a modifying clause is ordinarily to be confined to the last antecedent does not apply where a consideration of the subject matter requires a different construction. [Citing cases.] The punctuation of the paragraph . . . confirms this view, and punctuation, although often disregarded, may be resorted to when it tends to throw light upon the meaning of the language.'
 "`When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'"
It is generally accepted that punctuation also acts as an aid to interpretation:
 "The better rule is that punctuation is a part of the act and that it may be considered in the interpretation of the act but may not be used to create doubt or to distort or defeat the intention of the legislature. When the intent is uncertain, punctuation, if it affords some indication of the true intention, may be looked to as an aid." 2A Sutherland, Statutory Construction, sec. 47.15, p. 98 (4th Edition, Sands. 1973).
The court in Dorst, supra, relied on the presence of a comma, the relationship of the modifying clause to the subject matter, and the purpose of the statute to conclude that the clause in question modified all the preceding clauses. Here, it is evident from the circumstances that the clause "except spectator sports," modifies the phrase "all fields." A comma is present and, as the court said in Dorst: *Page 523 
 "If the modifying clause had been intended to modify only the last antecedent clause, there would have been no occasion for the comma and it would have been omitted." Id. at 577.
Thus, sec. 23.30 (1), Stats., reflects the legislature's intention to eliminate spectator sports from those fields of recreation to be included in the program's "comprehensive system of state and local outdoor recreation facilities and services."
The appropriations scheme also indicates the Legislature's intention that secs. 28.04 and 23.30, Stats., be construed together. In the same act which created the Outdoor Recreation Aids Program (ORAP), the legislature renumbered and amended sec.20.370 (2) (i) as sec. 20.370 (2) (dm). See ch. 353, sec. 10, Laws of 1969. That appropriation provided:
"20.370 (2) FORESTRY
"***
 "(dm) Biennially from moneys allocated under sub. (7) (a), the amounts in the schedule for the development of forest recreational lands. The total amounts expended under this paragraph and sub. (1) (dm) shall not exceed $9,232,000 for the 1969-71 biennium."
Section 20.370 (7) (a), amended simultaneously by ch. 353, sec. 20, Laws of 1969, and referred to in sec. 20.370 (2) (dm), supra, provided:
 "20.370 (7) OUTDOOR RECREATION PROGRAM. (a) General program operations. The unencumbered balance in s. 20.370
(7), 1967 stats., on June 30, 1969, and as a continuing appropriation on July 1, 1969, and on each July 1 thereafter, an amount equal to .0165% of the current equalized value of all taxable property in this state for an outdoor recreation program. From the moneys credited to this appropriation, an amount equal to the amounts appropriated under par. (b) shall be lapsed into the general fund as required for the payment of principal and interest costs incurred in the financing of recreational facilities. The natural resources board may allocate the remaining funds in general accordance with s. *Page 524 23.30 to the appropriations specified in subs. (1), (2), (3), (4) and (8) and ss. 20.245 (1) (d) and 20.395
(3) (a).
 "1. The board may authorize expenditures from funds allocated to programs under subs. (1), (2) and (3) for such appraisal, surveying, negotiation and legal costs as are directly related to the additional land acquisition herein described, and it may authorize the expenditure of not more than 4% of the funds allocated to programs under sub. (3) (e) for administration of the program under s. 23.09 (19)." (Emphasis added.)
Thus, from money allocated under sec. 20.370 (7) (a) the legislature appropriated money for the development of forest recreational lands under sec. 20.370 (2) (dm). By ch. 125, sec. 108, Laws of 1971, sec. 20.370 (2) (dm) was repealed and has not since been recreated. Existing sec. 20.370 (7) (a), however, retains language referring to allocations of funds "in accordancewith s. 23.30 to the appropriations specified in this section . . ." which of course, would include sec. 20.370 (2), Forestry. See ch. 125, sec. 113, Laws of 1971; ch. 90, sec. 78, Laws of 1973.
I can only conclude that by tying the forestry appropriation under sec. 20.370 (2) with the ORAP funds appropriated under sec.20.370 (7) (a), the legislature intended that the Department of Natural Resources undertake recreational development on state forest lands "in accordance with" the general provisions of ORAP, which, by the language of sec. 23.30 (1), excludes spectator sports from those activities in which the public use will be facilitated and encouraged.
In addition to sec. 23.30, Stats., and the appropriations scheme, other statutes indicate the legislature's intention that spectator sports are not an appropriate activity in state forests. Section 23.09 (11), Stats., providing state aids to counties desiring recreational facilities in county forests, defines recreational facilities:
 "For the purposes of this subsection outdoor recreational facilities shall mean the development of picnic and camping grounds, nature trails, snowmobile trails and areas, beaches and bath houses, toilets, shelters, wells and pumps, and fireplaces. Costs associated with the operation and maintenance of *Page 525 
recreational facilities shall not be eligible for aids under this section." Sec. 23.09 (11) (b), Stats.
This statute clearly does not contemplate construction of bleachers to accommodate spectator sport activities in county forests aided by state funds.
When sec. 28.04, Stats., is read together with secs. 23.30 and23.09 (11), Stats., and the appropriations scheme to interpret the meaning of "recreation sites with appropriate facilities," it becomes clear that the Department does not have authority to construct bleachers and similar accouterments of spectator sports in state forests.
Your second question was:
 "2. Can the Department lease state forest property to another unit of government or to private interests for this purpose pursuant to Section 26.08, Wisconsin Statutes?"
Section 26.08 (1), provides:
 "The department may, from time to time, lease for terms not exceeding 15 years, parts or parcels of state park lands or state forest lands; and such leases shall contain proper covenants to guard against trespass and waste. The rents arising therefrom shall be paid into the state treasury to the credit of the proper fund. Licenses also may be granted to prospect for ore or mineral upon any of said lands; but proper security shall be taken that the licensees will fully inform the department of every discovery of ore or mineral and will restore the surface to its former condition and value if no discovery of valuable deposits be made. The department shall retain a copy of each such lease or license and file the original in the office of the board of commissioners of public lands."
It is my opinion that, read in light of the total statutory framework, this section does not authorize the Department of Natural Resources to lease state forest lands for the purpose of constructing spectator sport facilities. To lease state forest lands for this purpose would violate the intention of sec. 23.30, Stats. Even though the Department would spend no state funds on the project, a lease would effectively make state forest land available for *Page 526 
development in a field which the legislature has expressly deemed an inappropriate part of the comprehensive system of state and local recreation facilities. It would seem that state agencies cannot by lease and license authorize another entity to accomplish on state property what the agency itself cannot accomplish, unless such authority were clear from the language of the statute.
Furthermore, sec. 23.30 (3) makes DNR the coordinating body of the Outdoor Recreation Program:
 "The natural resources board is the body through which all governmental agencies and nongovernmental agencies may coordinate their policies, plans and activities with regard to Wisconsin outdoor recreation resources. . . ."
DNR derives its coordinating authority and duties from the same act (ch. 353, sec. 31, Laws of 1969) that excepts spectator sports from the state's recreation program. In the exercise of its jurisdiction over state forest lands under chs. 26 and 28, Stats., DNR cannot contravene the purpose and goals of its duties and authority under ch. 23.
For the above reasons, I must answer "no" to both your questions.
VAM:LMC