ED JACKAMONIS, Speaker State Assembly
The Committee on Assembly Organization has requested my opinion "as to whether or not a nursing home, which is operated by a religious organization, may give preference in admission to members of that religion." This question necessitates an analysis of the relevant state and federal law governing nursing home accommodations.
Section 942.04 (1), Stats., provides as follows:
 Whoever does any of the following is guilty of a Class A misdemeanor:
 (a) Denies to another or charges another a higher price than the regular rate for the full and equal enjoyment of any public place of accommodation or amusement because of sex, race, color, creed, physical condition, developmental disability as defined in s. 51.01 (5), national origin or ancestry; or
 (b) Gives preferential treatment to some classes of persons in providing services or facilities in any public place of accommodation or amusement because of sex, race, color, creed, national origin or ancestry; or
 (c) Directly or indirectly publishes, circulates, displays or mails any written communication which the communicator knows is to the effect that any of the facilities of any public place of accommodation or amusement will be denied to any person by reason of sex, race, color, creed, physical condition, developmental disability as defined in s. 51.01 (5), national origin or ancestry or that the patronage of a person is unwelcome, objectionable or unacceptable for any of those reasons . . . .
Under this subsection, giving a preference to members of one religion over persons not members of that religion is prohibited. Unless nursing homes operated by religious organizations are exempt from this prohibition, your question would have to be answered that such nursing homes may not give such preference. *Page 212 
The exemptions from this prohibition are listed in sec. 942.04 (2), Stats., which provides:
 "Public place of accommodation or amusement" shall be interpreted broadly to include, but not be limited to, places of business or recreation, hotels, motels, resorts, restaurants, taverns, barbershops, nursing homes, clinics, hospitals, cemeteries, and any place where accommodations, amusement, goods or services are available either free or for a consideration except where provided by bona fide private, nonprofit organizations or institutions.
Your question poses a problem of statutory construction: whether the exception of "bona fide private, nonprofit organizations or institutions" in sec. 942.04 (2), Stats., applies only to the last clause in the section, "any place where accommodations, amusement, goods or services are available either free or for a consideration," or whether the exception applies to the entire subsection.
Some aid in determining legislative intent in this case is provided by Service Investment Co. v. Dorst, 232 Wis. 574,288 N.W. 169 (1939), wherein the court held that the presence of a comma preceding the modifying phrase is necessary if the modifying phrase is to be interpreted as modifying all preceding clauses and not just the last antecedent clause. 232 Wis. at 577. This principle of statutory construction has been applied by this office. 63 Op. Att'y Gen. 519, 522 (1974). Based on these authorities, it would appear that the exemption in sec. 942.04 (2), Stats., applies only to the last antecedent clause. A further examination of the court's holding in Dorst, however, leads me to the opinion that the exemption does apply to the entire section.
In Dorst the court said: "Although as a general rule of construction a modifying clause is considered ordinarily to be confined to the last antecedent, that rule is not always applicable and may be easily rebutted where other circumstances so indicate." 232 Wis. at 577.
The Wisconsin court quoted with approval the United States Supreme Court's reasoning in Porto Rico Ry., Light Power Co. v.Mor, 253 U.S. 345 (1920). The Supreme Court said: "When several words are followed by a clause which is applicable as much to the *Page 213 
first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." 253 U.S. at 348. See also, In re Bowler Trust,56 Wis.2d 171, 178-79, 201 N.W.2d 573 (1972).
In my opinion the qualifying clause in sec. 942.04 (2), Stats., applies to all the previous clauses as well as the last antecedent clause. The enumerated examples of "[p]ublic place of accommodation or amusement" are parts of the more general category of "any place where accommodations, amusement, goods or services are available either free or for a consideration." It does not make sense to say that the exemption applies to a general category, which, by the terms of the statute, is to be broadly defined, but not to enumerated examples of "[p]ublic place of accommodation or amusement" that clearly can be included within the purview of the last antecedent clause.
Thus, in my opinion, nursing homes operated by bona fide private, nonprofit organizations or institutions, including religious associations, come within the exemption provided in sec. 942.04(2), Stats. This interpretation comports with other statutes prohibiting discrimination. In sec. 111.325, Stats., for example, the Legislature made it unlawful for any employer, labor organization, licensing agency or person to discriminate against any employe or any applicant for employment or licensing. In sec.111.32 (3), however, the Legislature specifically exempts "a social club, fraternal or religious association not organized for private profit" from the definition of employer. Further, sec.50.03 (9), Stats., includes a recognition that some nursing homes may admit only adherents of a certain church or denomination and may be so designated.
As regards the prohibition against discrimination based on creed in the use of private facilities, found in sec. 942.04 (3), Stats., I do not believe that prohibition applies in the present instance. The Legislature has already declared nursing homes to be places of public accommodation in sec. 942.04 (2), Stats., while sec. 942.04 (3), Stats., relates to places other than those of public accommodation, namely "private facilities commonly rented to the public." Therefore, religious nursing homes are not subject to sec. 942.04 (3), Stats. *Page 214 
Similarly, the prohibition against discrimination based on creed in selling or renting housing, found in sec. 101.22, Stats., does not apply to this situation. Nursing homes are places of public accommodation, not "housing," according to the Legislature. The Legislature intended by sec. 942.04 (2), Stats., to exempt religious nursing homes from discrimination laws, and to read sec. 101.22, Stats., as subjecting religious nursing homes to discrimination laws would be inconsistent with that intent. Therefore, religious nursing homes are not subject to sec. 101.22, Stats.
I therefore conclude that nothing in the Wisconsin statutes prohibits a nursing home operated by a religious organization from giving preference in admission to members of that religion. The question remains whether any federal statute or regulation prohibits such a preference policy.
While your question does not indicate so, it will be assumed that the religious nursing home involved is a certified Medicaid provider so as to render it subject to federal statute and regulation. Religious nursing homes may constitutionally be certified as Medicaid providers since the state may, in certain instances, contract with and even aid a religious organization in order to obtain goods and services for a public, secular purpose,State ex rel. Warren v. Nusbaum, 55 Wis.2d 316, 321,198 N.W.2d 650 (1972). Here, the state may contract for nursing home services so as to provide quality nursing care for its needy residents. This is certainly a permissible public, secular purpose.
It will first be considered whether the religious nursing home's preferential admissions. policy is actionable under42 U.S.C. sec. 1983. This statute provides a right of action to a person when:
 a. The defendant has deprived that person of a right secured by the Constitution or laws of the United States; and
 b. The defendant has acted "under color" of any state law, ordinance, etc. (hereinafter, the "state action" requirement), Adickes v. S. H. Kress and Company, 398 U.S. 144, 150 (1970). *Page 215 
Neither requirement is fulfilled in this case. While a state may not discriminate on the basis of religion (absent a compelling state interest served by the discrimination), Remmersv. Brewer, 361 F. Supp. 537, 542 (S.D. Iowa 1973), Sherbert v.Verner, 374 U.S. 398, 402 (1963), there is no law that a religious organization not acting under color of state law may not so discriminate. Purely private discriminatory conduct is not constitutionally prohibited. Golden v. Biscayne Bay Yacht Club,521 F.2d 344, 349 (5th Cir. 1975); Adickes; Shelley v. Kraemer,334 U.S. 1, 13 (1948).
Further, the admissions policy of a nursing home is not state action under the three tests of what constitutes state action, namely the "public function" test, the "nexus" test and the "state instrumentality" test.
"Public function" state action occurs when a private actor does an act "traditionally reserved to the state." Wagner v. Sheltz,471 F. Supp. 903, 907 (D. Conn. 1979). Nursing home admissions are certainly not and never have been "reserved to the state;" such are usually private affairs. Therefore, the admissions policy survives the "public function" test. See also Musso v.Suriano, 586 F.2d 59 (7th Cir. 1978), cert. denied, 440 U.S. 971
(1979).
"Nexus" state action occurs when a private institution does a given act and:
 a. The state is significantly involved with the private institution;
 b. The state is involved in the very act that caused the injury to the plaintiff; and
 c. The state's involvement must encourage, aid, or connote approval of the private act.
Barrett v. United Hospital, 376 F. Supp. 791, 797 (S.D.N.Y. 1974).
By contracting with the nursing home for Medicaid purposes, the state does become significantly involved with the nursing home. However, the state is not involved with the nursing home's admissions policy. Medicaid regulations concern the state only with the health and safety aspects of the home, not with whom it admits. Indeed, a *Page 216 
Medicaid certification does not encourage or connote approval of the policy since the certifying state has no control over a home's admissions policy. Therefore, the nursing home admissions policy is not state action under a "nexus" approach.
"State instrumentality" state action occurs when the state actually administers or controls the private actor, so that the acts are, for all practical purposes, the act of the state and not of a private actor. Musso, 586 F.2d at 63. Mere allegations of state funding and general regulation of the institution, without evidence of actual administration or control by the state of the institution, does not fulfill this test. Id.
As noted previously, subjects such as a nursing home's admissions policy are not regulated by the state. Medicaid regulation concerns the state only with health and safety aspects of the home, and such regulation does not appear to rise to the level of control which would reduce a nursing home to a "state instrumentality." As such, absent any evidence which would lead one to believe that a particular nursing home was administered or controlled by the state, the nursing home's admissions policy would not be state action under a "state instrumentality" approach.
Thus, 42 U.S.C. sec. 1983 does not provide a cause of action against a nursing home using a preferential admissions policy.
A further question is whether 42 U.S.C. sec. 1985 (c) makes the religious nursing home's admission policy actionable.
This statute provides a cause of action when two or more persons "conspire or go in disguise on the highway or on the premises of another" to deprive another of his equal protection, privileges and immunities under the law. While there is some controversy as to whether 42 U.S.C. sec. 1985 (c) will make private discriminatory conduct illegal, the rule in this circuit appears to be that 42 U.S.C. sec. 1985 (c) does not make a private discrimination illegal where it is otherwise not illegal.Murphy v. Mount Carmel High School, 543 F.2d 1189, 1193-94 (7th Cir. 1976); Cohen v. Illinois Institute of Technology, 524 F.2d 818,828-29 (7th Cir. 1975); Dombrowski v. Dowling, 459 F.2d 190,196 (7th Cir. 1972); contra, Action v. Gannon, *Page 217 450 F.2d 1227, 1235 (8th Cir. 1971). The requirement remains that there must be state involvement in the discriminatory act for the discrimination to be actionable, and since there is no state involvement in the religious nursing home's admissions policy, there is no cause of action under 42 U.S.C. sec. 1985 (c). Recall that private discriminatory conduct is not constitutionally prohibited.
A final federal question is whether there is an implied right of action against a religious nursing home practicing a preferential admissions policy pursuant to 42 U.S.C. sec. 1396,et seq., the Medicaid statute.
In certain circumstances, a right of action may be inferred from a statute conferring a benefit on a person or group of persons in order to allow such person or group to sue to protect the benefit. Cort v. Ash, 422 U.S. 66 (1975). A detailed analysis of the requirements for this implied right of action will not be attempted because I am of the opinion that the preferential admissions policy of a nursing home does not deny a Medicaid recipient any benefit conferred by law or regulation.
Nowhere is discrimination based on religion even inferentially prohibited by federal or state rule, since the relevant rules and statutes limit their prohibitions to discrimination based on race, color or national origin. See section HSS 104.01 (1) Wis. Adm. Code, 45 C.F.R. sec. 80.3 (a), 42 U.S.C. sec. 2000d. Further, even though the Medicaid recipient may freely choose a Medicaid provider from among the certified providers, sec. 49.45
(9), Stats., a recipient is not thereby guaranteed treatment at that facility. The free choice cannot be impaired by the state; the certified provider may refuse to treat a Medicaid recipient if it wishes. The refusal by a provider is not a denial of benefits, since the Medicaid recipient can go elsewhere to receive his or her care. Therefore, since neither42 U.S.C. sec. 1396, et seq., nor any other rule or statute confers on a Medicaid recipient the right to enter any nursing home he or she pleases, there is no implied right of action against the nursing home which has a preferential admissions policy such as you describe.
Therefore, I conclude that no federal rule or statute prohibits a nursing home operated by a religious organization from giving preference *Page 218 
in admission to members of that religion. Since no state or federal law, rule or constitutional provision prohibits the religious nursing home from giving preference in admission to members of that religion, a religious nursing home is free to implement such an admissions policy.
BCL:JDJ:EWJF